COMMONWEALTH *vs.* ROBERTO CARMENATTY. No. 93-P-1056. August 15, 1994. *Practice, Criminal*, Required finding. *Controlled Substances. Joint Enterprise. Evidence*, Hearsay, Argument by prosecutor.

Roberto Carmenatty, the defendant, was convicted of knowingly possessing cocaine with intent to distribute it, G. L. c. 94C, § 32A, and of knowingly possessing cocaine with intent to distribute it within 1,000 feet of a school, G. L. c. 94C, § 32J. He appeals from the denial of his motions for required findings of not guilty. He also argues that certain testimony was erroneously admitted and that portions of the prosecutor's closing argument were improper. Of those three issues, the only one that presents difficulty is whether the defendant was entitled to required findings of not guilty. We affirm.

1. *Motion for required findings of not guilty.* Carmenatty made timely[1] motions for required findings of not guilty. Our inquiry is whether the Commonwealth, at those points, had produced evidence which, when read in a light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact that each element of the crimes had been proved beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). *Commonwealth* v. *Sheline*, 391 Mass. 279, 283-284 (1984). *Commonwealth* v. *Manzanillo, ante* 24, 27 (1994).

The Commonwealth proceeded under the theory that Carmenatty either constructively possessed cocaine found on the person of Nerida DeJesus or engaged in a joint venture with her to distribute the drug. To prove constructive possession of an illicit substance, the Commonwealth must establish that the defendant: (1) knew of the location of the drugs; (2) was able to exercise dominion or control over them; and (3) had the intent to exercise such dominion or control. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989). *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 613 (1976). Something more than defendant's awareness of and proximity to the drugs is required. *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 508 (1991) (Gillerman, J., dissenting). *Commonwealth* v. *Brown*, 34 Mass. App. Ct. 222, 226 (1993). To prove Carmenatty's participation in a joint venture to distribute cocaine, the Commonwealth was required to establish that he: (1) was present at the scene of the crime; (2) intended to commit the crime of selling drugs or had knowledge that another person, i.e., Nerida DeJesus, intended so to do; and (3) by agreement was willing and able to help DeJesus if necessary. *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). *Commonwealth* v. *Sabetti*, 411 Mass. 770, 779 (1992). *Commonwealth* v. *Meehan*, 33 Mass. App. Ct. 262, 264-265 (1992).

With those criteria in mind, we consider what the jury could have found on the basis of the evidence. Several police officers collaborated in the execution of a search warrant on July 7, 1992, in a two-bedroom apartment at 6A Richards Street, Worcester.[2] Carmenatty was in the living room when the police entered. DeJesus and another — unidentified — woman, and that second woman's several children were also in the living room. A search of the person of DeJesus produced five plastic bags of cocaine, containing a total of .34 gram in one pants pocket and one plastic bag of cocaine, containing .01 gram, in the other pants pocket.[3] Each of the bags of cocaine, packaged in the corners of plastic baggies tied with a knot, had

<hr />

[1]At the close of the Commonwealth's case and at the close of all the evidence. See Mass.R.Crim.P. 25, 378 Mass. 896 (1979).

[2]The building at 6A Richards Street abuts property on which the Goddard School of Science and Technology is located. The school building is approximately fifty to seventy-five feet from the duplex apartment building in which apartment 6A is located.

[3]The contents and weight of the bags were analyzed, and a certificate of analysis was received in evidence.

a street value of approximately ten dollars. The officers' search of Carmenatty revealed no drugs or drug paraphernalia. He did have two fifty dollar bills on his person. The police found two plastic baggies with the corners torn or cut off in the kitchen trash container, and a box of baggies in the kitchen cabinet. Of the two bedrooms, one contained a bed and two dressers. In the drawer of one of those dressers, an officer found personal papers of Carmenatty mingled with those of DeJesus. Those papers included such items as a rent receipt, a gas bill, an electric bill for the apartment, the defendant's welfare card, and his University of Massachusetts Medical Center card.

In the drawer of the second dresser, Officer Darnell McGee found, among men's and women's underclothes, a black Deering precision scale on which he noticed a white powder residue. McGee, at trial, identified the scale and told the jury that, if they looked closely, they could still see some white powder on the scale, although there was no longer as much as when he had found the scale in his search. The government presented no evidence that the residue was cocaine.

On the basis of the personal papers, receipts, and so forth, the jury reasonably could find that Carmenatty lived in the apartment. As to the scale, the jury could infer that Carmenatty was in constructive possession of it, together with DeJesus. It was located in their common bedroom drawer. *Commonwealth* v. *Pratt*, 407 Mass. 647, 652 (1990). *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 556-557 (1991). See also *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 438 (1991). A precision scale is not inherently an illicit possession; at the same time, it is not ordinary household equipment. Officer McGee testified on cross-examination that, in his experience, he had never found a drug user, as opposed to a drug seller, to keep a scale. The jury could reasonably infer that the precision scale was used in the marketing of drugs. Compare *Posters'N'Things, Ltd.* v. *United States*, 114 S.Ct. 1747, 1752 n.11, 1754 (1994) (items such as scales or razor blades, although not primarily designed for drug use may take on characteristics of drug paraphernalia by virtue of particular circumstances). The amount of money on the person of Carmenatty, i.e., the two fifty dollar bills, while not large, could have been regarded by the jury as significant in light of the evidence of the defendant's status as a welfare recipient. As no money had been found on DeJesus, who possessed the drugs, the jury could read the circumstances as pointing to Carmenatty's participation in drug sales. Compare *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 671 (1992), *S.C.*, 416 Mass. 1001 (1993).

It is, of course, possible that DeJesus was carrying on a modest drug operation without the assistance of the defendant, but the government does not need to exclude every reasonable hypothesis of innocence so long as the record as a whole supports a conclusion of guilt, beyond a reasonable doubt. *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). *United States* v. *Systems Architects, Inc.*, 757 F.2d 373, 377 (1st Cir.), cert. de-

nied, 474 U.S. 847 (1985). There was evidence which, when added up, warranted a finding that a minor league drug selling operation was being carried on in apartment 6A and that the defendant was a participant in it. See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 617-618 (1990), *S.C.*, 410 Mass. 1005 (1991); *Commonwealth* v. *Yazbeck*, 31 Mass. App. Ct. 769, 774-775 (1992).

2. *Other issues.*

(a) During the course of cross-examining the police officer who had found the personal papers, defense counsel probed whether the papers indicated any connection to selling drugs. The officer who was being examined answered that the papers "show a tie into an apartment that is known for selling drugs." Thereupon defense counsel responded: "Well, I didn't ask you that. I asked you if any of the papers that you brought to Court with you today, suggest that he was involved in the sale of drugs?" To that, the officer replied, "Yes, they do." Defense counsel inquired, "How was that?" The answer was: "That they tie him into an apartment that is known to sell drugs." Apart from this exchange, there had been no evidence that the apartment in which the defendant appeared to live was known as a site of drug traffic. There was no defense motion to strike the officer's statement and defense counsel was understandably reluctant to pursue the question further. The defense cannot now, on appeal, attack this testimony as inadmissible hearsay. *Commonwealth* v. *Paniaqua*, 413 Mass. 796, 803 (1992). The only inquiry can be whether there was a substantial risk of a miscarriage of justice. Under these circumstances there was not. *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 (1987).

(b) We have reviewed those portions of the prosecution's closing argument which the defense attacks as improper. That neither of the two statements in question was objected to nor remarked upon at trial, indicates that they did not sound unfair at the time. The government's closing does not strike us as untoward, and certainly nothing in it created a risk of a miscarriage of justice. *Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985). See also *Commonwealth* v. *Good*, 409 Mass. 612, 624-625 (1991).

*Judgments affirmed.*

*Maureen L. Fox* for the defendant.

*Matthew J. Mullaney*, Assistant District Attorney, for the Commonwealth.