## COMMONWEALTH *vs.* TRAVIS ROBINSON.

No. 96-P-1106.

Middlesex. April 18, 1997. - July 30, 1997.

Present: PERRETTA, GILLERMAN, & KASS, JJ.

*Evidence,* Expert opinion, Relevancy and materiality, State of mind. *Controlled Substances. Joint Enterprise.*

At the trial of indictments for possession of cocaine with intent to distribute and within 1,000 feet of a school, there was a factual basis for the judge's admission in evidence of expert testimony regarding the general mode of operation of two-person, street-level drug transactions, and such evidence was relevant to prove the defendant's intent or knowledge. [259-260]

Evidence at a criminal trial of the defendant's association with a drug dealer was properly admitted with limiting instructions on the issue of the defendant's knowledge of or acquaintance with the drug dealer. [260-261]

At a criminal trial in which the Commonwealth proceeded on a theory that the defendant participated in a joint venture to sell cocaine, the evidence presented, together with the inferences to be drawn therefrom, was sufficient to allow the jury to find the defendant guilty beyond a reasonable doubt. [261-262]

INDICTMENTS found and returned in the Superior Court Department on September 2, 1994.

A pretrial motion to suppress evidence was heard by *Martha B. Sosman,* J., and the cases were tried before *Margot Botsford,* J.

*Deirdre Thurber* for the defendant.

*Carlene A. Pennell,* Assistant District Attorney (*Gerard Leone,* Assistant District Attorney, with her) for the Commonwealth.

KASS, J. Travis Robinson was found guilty of possession with intent to distribute cocaine (G. L. c. 94C, § 32A[*c*]) and possession with intent to distribute cocaine within 1,000 feet of a school (G. L. c. 94C, § 32J). He appeals on the grounds that the trial judge made evidentiary errors and that the trial judge

erroneously denied his motion for a required finding of not guilty. We affirm his convictions.

The Commonwealth prosecuted the case against Robinson on a joint venture theory. To make its case against the defendant as a joint venturer, the Commonwealth had to prove that he: (1) was present at the scene of the crime; (2) intended to commit the crime or had knowledge that another intended to commit the crime; and (3) by agreement was willing and able to help the other if necessary. *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988). *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997). *Commonwealth* v. *Zawatsky*, 41 Mass. App. Ct. 392, 399 (1996). The facts, set out in the light most favorable to the Commonwealth, are these. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979).

Peter Chambers, a drug addict, had driven to the corner of Hayes and Clafton Streets in Framingham, an area known by police officers for frequent drug transactions, and twice bought cocaine from Jose Rosario during the afternoon of August 19, 1994. Chambers returned to the area for a third time that day with his friend Michael Pierce at 8:00 P.M. Chambers told Pierce he wanted to talk to somebody and asked him to pull his truck over to the corner where about a dozen people were gathered. Four, including Rosario and the defendant, approached the truck. Chambers informed Rosario that he did not want to buy cocaine from him again because his stuff was small. Two of the four individuals stepped away from the truck; Rosario and the defendant stayed put. Chambers then asked the defendant what he had, to which the defendant replied, let me see the money. At the defendant's request Chambers stepped out of the truck. Now Rosario backed away from the conversation and stood on the corner, approximately 15 to 20 feet away. Chambers again asked to see what the defendant had, to which the defendant replied with a punch in the nose. Rosario joined the defendant in the fight. Others who had been congregating on the corner also weighed in. Chambers retreated to the truck and drove with Pierce to the police station.

Chambers reported to the police that four people had attacked him and robbed him of $40 tucked in the waistband of his sweatpants. He did not mention to the police that he was attempting to buy cocaine at the time, although the officers who questioned Chambers sensed a drug deal gone awry. Officer George Carey and Lieutenant Steven Carl escorted Chambers,

in a marked cruiser, back to the corner of Hayes and Clafton Streets. Chambers identified Rosario, who was still on the corner, as one of the individuals involved in the robbery. The officers approached Rosario and asked him to remove his hands from his pockets. When he did so, Lieutenant Carl noticed a plastic baggie containing a rock of cocaine hanging out of Rosario's pocket[1] and confiscated it. Rosario managed to flee at that point, and Lieutenant Carl broadcast his description over the police radio to other officers in the area.

Sergeant Kevin Slattery, who had received Lieutenant Carl's transmission, began a foot search of the area. As he ran past a driveway on Highland Street, about fifty yards away from the corner of Hayes and Clafton Streets, Sergeant Slattery spied the defendant, sweating and covered with grass clippings, crouched on his hands and knees behind a parked car. Sergeant Slattery, who had seen the defendant and Rosario together in the area ten times in the preceding month, radioed Lieutenant Carl to bring Chambers by for an identification. From the back of the police cruiser Chambers observed the defendant and told the officers that the defendant had *not* been involved in the robbery. Sergeant Slattery searched the defendant and found only a dollar bill.

After returning to the police station, Chambers told officers Carl and Carey that the defendant had, indeed, been involved in the robbery but that, initially, he had been afraid to identify him because a man standing close to the cruiser had put his finger to his lip indicating, to Chambers at least, that he should keep quiet. Chambers also admitted to the police officers that the incident was a drug deal gone bad, and picked Rosario and the defendant out of a photo array as men involved in the incident.

1. *Evidentiary issues.*

a. *Expert testimony regarding street-level drug transactions.* The defendant's first assignment of error is the trial judge's admission in evidence, over objection, of Sergeant Slattery's testimony regarding the general mode of operation of two-person, street-level drug transactions. Characteristics of two-person street-level drug transactions are beyond the common store of knowledge of the average juror. Testimony about such operations, therefore, is helpful to the fact finders and is

---

[1]Just how the baggie could have been hanging *outside* Rosario's pocket so that Lieutenant Carl could see it asks something of the imagination, but Carl's accuracy and veracity on that point are not an issue in the case.

admissible so long as it is "more akin to a description of the modus operandi of street level dealers than a 'profile' of a drug dealer." *Commonwealth* v. *Dennis,* 33 Mass. App. Ct. 666, 669 (1992), *S.C.,* 416 Mass. 1001 (1993). See *Commonwealth* v. *Zwickert,* 37 Mass. App. Ct. 364, 368 (1994).

Sergeant Slattery testified that, in his experience, street-level drug dealing is more often than not a two-person operation, with one person acting as a middleman, holding either the drugs or money, and facilitating communications between the buyer and the dealer. In his testimony Slattery did not speak to the specific activities of the parties that night on the corner of Hayes and Clafton Streets, and the jury were free to draw their own conclusion as to whether the prosecution made out a case that the conduct of the defendant and Rosario that night fit the pattern that Slattery had described.

The defense argues that the expert testimony should have been excluded both because it was not relevant and because there was no factual basis for it in the evidence. Yet the testimony was relevant for its tendency to prove either that the defendant intended to commit the crime of selling drugs or knew that Rosario intended to do so. The facts in evidence, that Rosario and the defendant both approached Chambers's vehicle, that Rosario backed off while the defendant repeatedly asked to see Chambers's money, and that the defendant acted violently toward Chambers, who, it might be inferred, had just insulted Rosario, provided an adequate factual basis for the admission of the expert testimony.

b. *Testimony regarding the defendant's prior association with Rosario.* Sergeant Slattery also testified that he had observed the defendant and Rosario together in the area of Hayes and Clafton Streets ten times in the month immediately preceding the incident involving Chambers. In soliciting that testimony, the Commonwealth sought to establish the defendant's knowledge of Rosario's intent to distribute cocaine by showing a relationship between the two, and by inference, the defendant's knowledge of Rosario's business dealings. The trial judge, cognizant that a defendant's guilt can not be based on mere association with a criminal, *Commonwealth* v. *Perry,* 357 Mass. 149, 151 (1970), gave a limiting instruction — twice — that the testimony was admitted solely on the issue of the defendant's knowledge of or acquaintance with Rosario.

"The jury may infer the requisite mental state from the

defendant's knowledge of the circumstances and subsequent participation in the offense." *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). *Commonwealth* v. *Cohen*, 412 Mass. 375, 381 (1992). Contrary to the defendant's assertion, the evidence was relevant to show that it was unlikely that the defendant was accidently or unknowingly associated with a drug dealer, see *Soares*, *supra* at 471, and, given the limiting instruction provided by the judge, its relevance was not outweighed by its prejudicial effect.

2. *Sufficiency of the evidence.* At trial the Commonwealth seemed to proceed under the apprehension that in order to prove the defendant's participation in a joint venture to sell drugs it was also necessary to prove the defendant's constructive possession of the cocaine the police found on Rosario. The theories of constructive possession and joint venture are, however, alternative theories with which to connect an accused to the crime. See *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 498-499 (1991); *Commonwealth* v. *Carmenatty*, 37 Mass. App. Ct. 908, 909 (1994). One of the ways the Commonwealth could establish the defendant's intent to commit the crime was to prove that he constructively possessed the cocaine found on Rosario. The case was submitted to the jury, however, on a theory of joint venture; the judge so instructed the jury. There is, accordingly, no foundation for the defendant's argument that the trial judge should have allowed his motion for a required finding of not guilty because the Commonwealth had failed to establish the elements of constructive possession. The evidence the Commonwealth presented and the inferences to be drawn therefrom were sufficient to allow a jury to find, beyond a reasonable doubt, the elements of joint venture. *Latimore*, 378 Mass. at 676-677. As the defendant challenges the sufficiency of the Commonwealth's evidence on each element of joint venture, we address them in turn.

As to the first element of joint venture, Chambers's testimony at trial placed the defendant at the scene of the crime. The defendant's argument that the Commonwealth's evidence is insufficient on this element because the defendant was not present when the officers confiscated the cocaine from Rosario is misplaced, because the crime occurred when the defendant and Rosario approached Chambers in an attempt to consummate a drug deal, not when the officers searched Rosario.

The jury could infer the defendant either intended to distribute

the cocaine or knew that Rosario intended to so do, the second element of joint venture, from (i) his frequent association with Rosario, who had sold cocaine to Chambers twice that day in the area of Hayes and Clafton Streets, (ii) his approach to and standing with Rosario while Chambers said he did not want to buy from Rosario again, (iii) his continuing discussion with Chambers and request that Chambers show him money in response to Chambers's request to see the drugs, and (iv) his beating of Chambers after Chambers had grumbled about Rosario's "stuff" and refused to let the defendant see the money.

The Commonwealth's evidence also allowed the jury to find that the defendant was willing and able to provide Rosario with assistance in committing the crime on the ground, in addition to those just enumerated, of Sergeant Slattery's testimony that street-level drug transactions often involve two persons — the dealer and a middleman. In light of this testimony, and Chambers's testimony that the defendant asked to see his money after Rosario had backed away from the negotiations, the jury could infer that the defendant was acting as Rosario's middleman. See *Ortiz,* 424 Mass. at 856-857. Obviously, the evidence allowed of other scenarios, for example, that the defendant was a dealer independent of Rosario and moved into the gap when Chambers seemed not to want to buy from Rosario. In proving its case, however, the Commonwealth need not exclude every other hypothesis; it needs to present evidence from which a finder may infer the essential facts. *Commonwealth* v. *Merola,* 405 Mass. 529, 533 (1994). *Commonwealth* v. *Manzanillo,* 37 Mass. App. Ct. 24, 27 (1994). The Commonwealth lifted that burden in this case.

*Judgments affirmed.*