## COMMONWEALTH *vs.* PATRIENA C. DAYES.

No. 98-P-1289.

Berkshire. March 8, 2000. - June 15, 2000.

Present: PORADA, DREBEN, & DUFFLY, JJ.

*Controlled Substances. Practice, Criminal,* Motion to suppress, Waiver, Voluntariness of statement, Admissions and confessions. *Evidence,* Voluntariness of statement, Admissions and confessions, Spontaneous utterance, Opinion. *Constitutional Law,* Waiver of constitutional rights, Admissions and confessions.

At a hearing on a criminal defendant's motion to suppress her statements to police, ample evidence supported the judge's conclusions that the defendant had validly waived her Miranda rights and that her statements were voluntary [420-421], and further that Miranda warnings were correctly and timely administered [421].

At a criminal trial, the spontaneous utterance of a witness was properly admitted in evidence, and, even if erroneously admitted, the statement was not prejudicial as it in no way implicated the defendant. [422]

At the trial of indictments for possession of cocaine with intent to distribute and such possession within 1,000 feet of school property, admission of modus operandi evidence was error, based on the state of the evidence adduced at trial; however, in light of the strength of the Commonwealth's case, it could not have had more than slight effect on the jury's verdict, and did not constitute reversible error. [422-423]

COMPLAINT received and sworn to in the Pittsfield Division of the District Court Department on September 3, 1996.

A pretrial motion to suppress evidence was heard by *Anthony J. Roberto, Jr.,* J., and the case was tried before *Alfred A. Barbalunga,* J.

*Ronald H. Cody* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant was convicted of possession of cocaine with intent to distribute and possession of cocaine with intent to distribute within 1,000 feet of school property. On ap-

peal, she claims the motion judge erred in denying her motion to suppress her statements at the scene of her arrest and at booking and the trial judge erred in admitting an out-of-court statement of a missing witness as a spontaneous utterance and expert testimony from a police officer describing the modus operandi of an out-of-town street dealer in drugs in Pittsfield. We affirm.

1. *Motion to suppress.* The defendant argues that her motion to suppress should have been allowed because her waiver of Miranda rights and statements made at the scene of the arrest and subsequently at booking were not voluntary. The defendant also claims that her statement at booking regarding her employment status should be suppressed because she was not readvised of her Miranda rights prior to being asked about her employment status. The motion judge denied the motion without making any findings. The omission of findings is not fatal, however, where the reasons for the ultimate conclusions are clearly evident from the record. *Commonwealth* v. *Lanoue,* 392 Mass. 583, 586 n.2 (1984). Such is the case here. The only witnesses at the suppression hearing were the two police officers who made the arrest and the defendant. At the conclusion of the suppression hearing, the judge stated, "I think I've decided this case. And I'll tell you flat out, I believe almost nothing that [the defendant] said. I find her to be a very incredible witness . . . ." The judge's statement and his subsequent denial of the motion, thus, imply resolution of all factual issues in favor of the Commonwealth. *Ibid.*

The determination of the voluntariness of the defendant's waiver of her Miranda warnings and her statements to the police lay in the judge's assessment of the witnesses' credibility. Although the defendant testified that, in the hour and a half preceding her arrest, while she was cooking her dinner, she had consumed two shots of cognac, Southern Comfort mixed with cola, two sixteen-ounce bottles of beer, and a shot of rum, and smoked one and a half marijuana "blunts," the judge could well find this testimony incredible in light of the officers' testimony that when the defendant spoke to the officers she was sober and coherent and did not smell of marijuana or alcohol. Further, both officers testified there was no evidence of alcohol consumption or use of marijuana in the apartment. In addition, the judge had an opportunity to observe a videotape of the defendant immediately after her arrest and to evaluate her

Commonwealth v. Dayes.

demeanor at that time.[1] The judge could also take into account the officers' testimony that it was the defendant who had initially requested to speak to the police. There was thus ample evidence to justify the judge's conclusion that the defendant had validly waived her Miranda rights and her statements were voluntary.

It is also clear from the evidence adduced at the hearing that the defendant was given her Miranda rights at the scene of the arrest. Both officers testified to this fact and the defendant herself testified that her rights were read to her. It is also undisputed that the defendant was not readvised of her rights until after the booking procedure was complete. In *Pennsylvania* v. *Muniz*, 496 U.S. 582 (1990), the Supreme Court held that the police may not ask questions during booking that elicit incriminating admissions without giving timely Miranda warnings. *Id.* at 602 n.14. Based on *Muniz,* we stated that, in drug cases in which the defendants are asked about their employment status during booking, it would be preferable, unless Miranda warnings are repeated prior to booking, to "scrub" questions about employment status from the booking ritual. *Commonwealth* v. *Guerrero*, 32 Mass. App. Ct. 263, 267-268 (1992). Subsequent to *Guerrero*, the Supreme Judicial Court ruled that under Federal law, "where an arrestee's employment status may prove incriminatory, the police must give Miranda warnings before asking questions about employment." *Commonwealth* v. *Woods*, 419 Mass. 366, 372 (1995). However, in both *Muniz* and *Woods* no Miranda warnings were given at all before the question calling for a potential incriminatory response was asked. Here, Miranda warnings were given to the defendant at the time of her arrest. Immediately thereafter, she was transported to the police station and booked. We have repeatedly held that an accused need not continually be reminded of his or her Miranda rights once he or she has intelligently waived them. *Commonwealth* v. *Mello*, 420 Mass. 375, 386 (1995). In this case, where no significant lapse of time occurred between the defendant's being given Miranda rights at the scene of her arrest and her booking procedure, we decide there was no error in the failure to readvise her of her Miranda warnings.

[1]Prior to oral argument, the defendant filed a "motion for transmission of a trial court exhibit," the videotape of the defendant's booking procedure. We have viewed the tape, and it does not support the defendant's contention.

Commonwealth *v.* Dayes.

2. *Spontaneous utterance.*[2] The defendant claims that the judge should not have allowed a police officer to testify to the statement made by the defendant's roommate upon his arrival at the defendant's apartment house in response to a call to the police. The officer testified that, when he arrived at the apartment house, he saw Jennifer Sulak holding a towel to the back of her head and walking out of the building. He testified that she was shaking and appeared frightened. Over the objection of the defendant, the officer was permitted to testify that she walked up to him and told him that her roommate's boyfriend, Dwight, had hit her in the back of the head with a pipe and threatened to shoot her with a gun. She then gave the officer permission to search the apartment. The defendant argues that the testimony was inadmissible as a spontaneous utterance and was prejudicial.

The trial judge did not abuse his discretion in allowing this evidence. "[A]n utterance is spontaneous if it is made under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark, and thus it has sufficient indicia of reliability." *Commonwealth* v. *Zagranski*, 408 Mass. 278, 285 (1990). The statement must also tend to qualify, characterize, and explain the underlying event. *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994). Here, the demeanor of Sulak upon the officer's arrival and the statement met those prerequisites. Cf. *Commonwealth* v. *Whelton*, 428 Mass. 24, 26-27 (1998) (statement of victim's daughter who was visibly upset made to police officer minutes after answering an emergency call admissible as spontaneous utterance). The statement was also relevant for it explained both the officer's presence and reason for the search of the apartment. Further, even if we were to assume its admission was error, the prejudice, if any, to the defendant was slight for the statement in no way implicated the defendant.

3. *Opinion evidence.* The defendant also argues that a police officer should not have been permitted to testify how an out-of-town drug dealer would set up an operation in Pittsfield. Over the objection of the defendant, an experienced narcotics officer testified that it was common for an out-of-town drug dealer to

---

[2]The parties have presented this issue as a question of the applicability of the spontaneous utterance exception to the hearsay rule. We have our doubts whether the challenged testimony amounts to hearsay, but note that, in either case, the testimony was admissible.

"hook up" with a female or move in with one; that all the bills for a place of operation would be in the female's name so the drug dealer could not be tied to the place of operation; and that the drug dealer would usually supply the female with drugs for her addiction or with money to pay the bills in exchange for his place of operation. While a trial judge has discretion in determining the relevance of evidence, *Commonwealth* v. *Woods*, 414 Mass. 343, 355, cert. denied, 510 U.S. 815 (1993), we think it was error to admit this testimony in evidence based on the evidence adduced at trial. Other than evidence that the defendant's boyfriend resided out of town, there was no evidence that he was a drug dealer or supplied money or drugs to the defendant. In fact, the apartment was apparently rented by the defendant's roommate (a rental receipt in Sulak's name was found) and no other evidence was presented regarding payment of expenses for the apartment. In these circumstances, we think the admission of this evidence was error but does not require reversal. This fleeting evidence would have had but slight effect on the jury's verdict in light of the strength of the Commonwealth's case, in particular the presence of a large cache of cocaine and drug distribution paraphernalia in an apartment in which the defendant admitted she resided and from which the other occupant of the apartment, Sulak, had admittedly been absent for one to two weeks. Finally, we note the prosecutor did not emphasize the testimony in her closing argument.

*Judgments affirmed.*