## COMMONWEALTH vs. RICHARD LOPEZ.

No. 01-P-81.

Middlesex. April 10, 2002. - September 6, 2002.

Present: LENK, KASS, & MILLS, JJ.

*Controlled Substances. Threshold Police Inquiry. Search and Seizure,* Threshold police inquiry, Probable cause. *Witness,* Police informer. *Constitutional Law,* Search and seizure. *Probable Cause. Evidence,* Expert opinion, Informer.

Police officers had reasonable suspicion that a person was committing or about to commit a crime and a sufficient basis to initiate a threshold inquiry of that person, where the person showed up in the place, at roughly the time, and driving the precise vehicle that a confidential informant had foretold, and acted in a suspicious manner [744-745]; and where the person's refusal to put his right hand on the vehicle's wheel, as ordered, and a clenched fist were highly suggestive that he was concealing something unlawful, the police had probable cause for a search of that fist, in which the defendant was holding six bags of cocaine [745].

At a criminal trial, where a nonpercipient expert witness improperly gave his opinion about the ultimate issue that the jury was to decide (i.e., whether the defendant possessed cocaine with intent to distribute it), the judge acted within his discretion in allowing the witness to correct his initial opinion to state that the defendant's conduct, equipment, and possessions were "consistent with" possessing cocaine with intent to distribute. [745-746]

INDICTMENTS found and returned in the Superior Court Department on August 26, 1999.

A pretrial motion to suppress evidence was heard by *Charles M. Grabau,* J., and the cases were tried before *Herman J. Smith, Jr.,* J.

*Laurie M. Halbert* for the defendant.

*Afton M. Templin,* Assistant District Attorney, for the Commonwealth.

KASS, J. Three Medford police officers apprehended the defendant Richard Lopez in possession of six packages of

cocaine. In the trial leading to his conviction by a jury of possession of cocaine with intent to distribute it (G. L. c. 94C, § 32A[c]), the Commonwealth introduced those bags of cocaine as essential evidence.[1] On his appeal, Lopez claims error in the denial of his motion to suppress the drugs seized from him. He argues that the police failed to articulate a reasonable suspicion that he was committing or about to commit a crime, and that they had insufficient basis to open the fist in which he held the bags of cocaine. The defendant asserts additional error in the admission of trial testimony by a nonpercipient expert that the defendant's conduct, equipment, and possessions were consistent with possessing cocaine with intent to distribute it.

1. *Facts.* We summarize the facts found by the judge who heard the motion to suppress, supplemented by uncontradicted evidence in the record. Those findings are binding on us in the

---

[1]Lopez was convicted of drug distribution as a repeat offender. In form, his indictment comprised two charging pages under a single indictment number: the first page alleged his distribution of cocaine in violation of G. L. c. 94C, § 32A(c); the second alleged, using language lifted from G. L. c. 94C, § 32A(d), the repeat offender provision, that at the time of the distribution Lopez had previously been convicted of distributing a class B substance. After the guilty verdict as to the first page of the indictment, Lopez entered a plea of guilty to the second. See generally G. L. c. 278, § 11A. The trial judge then ordered, with Lopez's consent, that the § 32A(c) distribution conviction be placed on file, but the judge imposed a sentence of incarceration (of five to six years) for the repeat offender charge.

We agree with the parties that the filing and sentencing arrangement was improper: the repeat offender provision is a sentence enhancement device that operates in conjunction with § 32A(c) and does not define a freestanding crime for which an independent sentence may be imposed. See *Bynum* v. *Commonwealth*, 429 Mass. 705, 708-710 (1999); *Commonwealth* v. *Fernandes*, 430 Mass. 517, 520-521 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000). So understood, the sentencing or filing in such a case must pertain to both parts of the indictment. We will, therefore, order that the sentence imposed here, and the order filing the distribution conviction, be vacated. Those circumstances, however, need not detain us from deciding the merits of Lopez's arguments concerning the distribution conviction. Neither party is prejudiced, as both have fully briefed and argued the relevant issues. As to reaching arguments concerning a filed and normally unappealable conviction (or one involving an illegal sentence, see *Commonwealth* v. *Melvin*, 399 Mass. 201, 202 & n.2 [1987]), we have discretion so to do. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975); *Commonwealth* v. *Bianco*, 388 Mass. 358, 364-365 (1983); *Murray* v. *Commonwealth*, 432 Mass. 1026, 1026-1027 (2000); *Commonwealth* v. *O'Brien*, 30 Mass. App. Ct. 807, 807 n.1 (1991).

absence of clear error. *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 384, cert. denied, 515 U.S. 1146 (1995); *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 65 n.5 (1997).

On May 7, 1999, David Montana, a detective sergeant of the Medford police and a supervisor in its narcotics unit, received a tip from a confidential informant that a person the informant knew as Rubin would be selling cocaine after 6 that evening in the parking lot of Kappy's liquor store at Wellington Circle. In the past, the informant had supplied information to Sergeant Montana that in at least one instance had resulted in an arrest and prosecution for a drug-related offense. Sergeant Montana had made arrests before at the Kappy's lot for distribution of drugs. By the informant's description, Rubin was a Hispanic man, over six feet tall and heavy set. He would be arriving in a blue mid-eighties Buick sedan bearing registration plate number 689OCL.

On the basis of the informant's tip, Sergeant Montana, together with detectives Kevin Braxton and Joseph Donahue, set up a surveillance of the Kappy's parking lot. Between 6:45 and 7:00 P.M., a blue Buick with plate number 689OCL entered the parking lot from the Route 16 side. The driver's appearance was consistent with what the informant had told Sergeant Montana to expect. As the driver of the Buick entered the lot, he looked left and right, scanning the area, and then drove through the lot, left it, and traveled around the liquor store. Soon, the Buick came back, its driver once again scanning the other cars in the lot, and backed into a parking spot to the left of that in which Sergeant Montana, in plain clothes, had parked his unmarked police vehicle. Montana watched as the suspect continually looked around the lot at incoming cars, while checking his rear view mirror, even though he was backed against a fence. After watching the driver of the Buick do this for about twenty minutes, Sergeant Montana, on the basis of his training and experience, decided it was time for a threshold inquiry. He radioed officers Braxton and Donahue for help.

The two officers approached the driver's side of the Buick by foot, displaying their badges and identifying themselves as police. Montana came from the passenger side. The officers ordered the suspect, who became the defendant, to put both his

hands on the steering wheel of his car. The defendant placed his left hand on the wheel as ordered, but kept his right hand down by his side, toward the vehicle floor, in a clenched fist. Montana thought something was in that fist, possibly a weapon. He grabbed the defendant's fist and pried it open, and six packages of cocaine fell out. An arrest of the defendant followed immediately, after which the police took from the defendant a pager, a cellular telephone, a wallet and $157 in cash.

2. *Sufficiency of basis for threshold inquiry.* Lopez argues that the police lacked sufficient basis to initiate an investigation of him. Police may embark on an investigatory inquiry if they have reasonable suspicion that a person has committed or is about to commit a crime. See *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Suspicion has to be something better than a hunch; it demands specific, articulable facts that warrant an inference that a person has committed a crime or is about to commit one. See *id.* at 406; *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990); *Commonwealth* v. *Grandison*, 433 Mass. 135, 139 (2001); *Commonwealth* v. *Cardoso*, 46 Mass. App. Ct. 901, 901 (1998).[2]

A tip arms enforcement authorities with more than a hunch, although, until vetted by standards of the reliability and basis of knowledge of the tipster,[3] it does not support a reasonable suspicion. See *Commonwealth* v. *Brown*, 31 Mass. App. Ct. 574, 576 (1991); *Commonwealth* v. *Redd*, 50 Mass. App. Ct. 904, 906 (2000). That the confidential informant passed the reliability test is conceded by the defendant; he instead attacks the foundation of the informant's knowledge. The precision with which the informant predicted the time of the defendant's arrival, described his car, and specified the plate number suggested some basis of knowledge. Any deficiency on that score was made up by the observations the police made. See *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990); *Commonwealth* v. *Brown*, *supra* at 576. The defendant showed up in the place, at roughly the time, and driving the precise vehicle, that the

[2]The "source" case for this principle is the well-known *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968).

[3]See *Aguilar* v. *Texas*, 378 U.S. 108 (1964); *Spinelli* v. *United States*, 393 U.S. 410 (1969).

informant had foretold. Thus primed, it did not require police officers of exceptionally wary nature to have their suspicions aroused. Not only had the defendant engaged in careful scouting of the parking lot, his continuing looking about and watchful waiting were strongly suggestive that something was up, probably a drug deal. See *Commonwealth* v. *Anderson*, 366 Mass. 394, 400 (1974); *Commonwealth* v. *Hall*, 50 Mass. App. Ct. 208, 210 (2000). Contrast *Commonwealth* v. *Lyons*, *supra* at 21.

3. *The search.* The police did not just sidle up to Lopez and say, "Do you mind if we have a word with you?" They swarmed around him, crying "police," showing their badges, and ordering him to put his hands on the wheel. As the officers reasonably suspected a drug transaction about to occur, they were justified in acting in a fashion that would prevent the defendant from hiding incriminating material, whether drugs or cash. When Lopez failed to put his right hand on the wheel, Sergeant Montana reasonably concluded that Lopez was concealing something from him. Montana spoke to his concern that Lopez was hiding a weapon. The motion judge credited that testimony, and as to matters of subsidiary fact, we defer to the trial judge. See *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980); *Commonwealth* v. *Hill*, 49 Mass. App. Ct. 58, 62 (2000). If a police officer is reasonably concerned for his safety and that of others, the officer is warranted in searching for concealed weapons that might be used for an assault. *Commonwealth* v. *Owens*, 414 Mass. 595, 600 (1993). Sergeant Montana's forcing open Lopez's fist was consistent with that purpose. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 601-602 (1992). Apprehension of danger aside, Lopez's refusal to put his right hand on the wheel, as ordered, and the clenched fist were highly suggestive, at least, that he was concealing something unlawful, and provided probable cause for a search of that fist.

4. *Propriety of the expert testimony.* The Commonwealth, over objection, was permitted to introduce testimony by Edward Troy, a State police detective. Detective Troy had been qualified as an expert in the distribution of narcotics, but had not been involved in the surveillance or arrest of Lopez; i.e., he was a nonpercipient witness. He had reviewed the evidence and on

that basis testified that he had noted the packaging of the cocaine in six separate bags, one-half gram per bag; the possession by the defendant of a wireless telephone and a beeper; the possession of the cocaine in his hand, ready to hand off; and the careful manner in which the defendant had cased the parking lot. As the detective put it, "taking all these things into consideration, all the different circumstances, [he] then came to th[e] opinion that the drugs were intended for distribution." Had Detective Troy's testimony been allowed to stand that way, it would have been improper. An expert witness may not give an opinion about the ultimate issue that a jury is to decide, in this case whether Lopez possessed cocaine with intent to distribute it. See *Commonwealth* v. *Woods*, 419 Mass. 366, 375 (1995); *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579-580 (1998); *Commonwealth* v. *Zavala*, 52 Mass. App. Ct. 770, 775 (2001).

The prosecutor, alert to the flaw in Detective Troy's testimony, immediately asked Detective Troy, "Your opinion is, of course, that it's consistent with distribution; is that correct?" Troy responded, "Yes, it is consistent with distribution." An opinion by someone trained and experienced in drug trafficking that conduct is "consistent with" a drug transaction is admissible. *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991). *Commonwealth* v. *Woods*, *supra* at 375 n.13. *Commonwealth* v. *Tanner*, *supra* at 581. *Commonwealth* v. *Zavala*, *supra*. In the *Tanner* opinion we expressed some skepticism about having the admissibility of expert testimony of the sort Detective Troy offered turn on the "consistent with" locution when the expert was also a percipient witness, and we also expressed the thought that the test ought to be whether the expert testimony was directed to explaining things to the jury that were likely to lie outside of their experience. *Commonwealth* v. *Tanner*, *supra* at 581-582. Measured by that criterion, the testimony of Detective Troy, who was not a percipient witness, had the requisite explanatory quality. As to what may have been a slip of the tongue on Detective Troy's part, the trial judge acted within the bounds of his discretion in allowing Troy to correct his statement. See *Commonwealth* v. *Delgado*, 51 Mass. App. Ct. 661, 664 (2001).

For the reasons stated, the order placing the distribution conviction on file is vacated, as is the sentence imposed on the repeat offender charge. The verdict on the distribution portion of the indictment and the guilty plea to the repeat offender portion of the indictment shall both stand, but the matter is remanded to the Superior Court for resentencing consistent with this opinion. (See note 1, *supra.*)

*So ordered.*