## COMMONWEALTH *vs.* KELMER MIRANDA.

No. 02-P-79.

Essex. April 8, 2003. - September 24, 2003.

Present: MASON, DREBEN, & MILLS, JJ.

Further appellate review granted, 440 Mass. 1106 (2003).

*Controlled Substances. Habitual Offender. Practice, Criminal,* Indictment, Amendment of indictment or complaint. *Witness,* Expert. *Evidence,* Expert opinion, Joint enterprise. *Joint Enterprise.*

The judge at a criminal trial erred in purporting to amend the indictment on which the jury had just rendered a verdict by engrafting the repeat-offender portion of a second indictment as a second count of the first, where the second indictment was separate and complete in itself, and where the repeat-offender component of the offense charged in the second indictment was not a component of the charge in the first indictment; because the postverdict amendment was fundamentally defective, the subsequent trial on the amended indictment was a legal nullity and required reversal. [381-384]

At the trial of indictments charging the defendant with distribution of heroin, the judge erred in admitting in evidence expert testimony by a police officer as to various methods of distribution of heroin, where none of the several sorts of cryptic conduct to which the officer testified occurred; moreover, the error may have unfairly tipped the balance in the Commonwealth's favor, in that the jury may have given inappropriate weight to the needless expert testimony and have inferred from the discussion of lookouts, rather than from the defendant's behavior only, that the defendant's looking around while the drug transaction between an undercover police officer and a third party took place had an inculpatory significance. [384-388]

The evidence at the trial of an indictment charging the defendant with distribution of heroin was sufficient to convict the defendant on a joint venture theory. [388]

INDICTMENTS found and returned in the Superior Court Department on June 28, 2000.

The cases were tried before *Christine M. McEvoy,* J.

*David B. Mark* for the defendant.

*Gregory I. Massing,* Assistant District Attorney, for the Commonwealth.

MILLS, J. The defendant appeals from his convictions of distribution of heroin, G. L. c. 94C, § 32, and of a second or subsequent offense of possession of heroin with intent to distribute, see G. L. c. 94C, § 32(*b*). On appeal he claims (1) erroneous amendment of an indictment; (2) erroneous admission of "modus operandi" police expert testimony; and (3) insufficiency of evidence as to joint venture. We reverse the conviction of distribution of heroin and vacate the conviction as to a second or subsequent offense.

1. *Procedural setting.* On June 28, 2000, a grand jury returned three indictments against the defendant, charging distribution of heroin (no. 1280); possession of heroin with intent to distribute, second or subsequent offense (no. 1281); and conspiracy to violate the controlled substances laws (no. 1282).[1]

On September 18, 2000, the defendant filed a "Motion for Voir Dire and Exclusion of Improper Opinion Testimony," and, after a voir dire of police detective and expert witness Brian Burokas, the judge ruled that the witness would be permitted to offer expert testimony as to the various methods of heroin distribution.

The Commonwealth entered a nolle prosequi as to the conspiracy indictment (no. 1282) and then moved for trial as to a single indictment (no. 1280, for distribution of heroin), upon which the jury returned a guilty verdict. After verdict the judge conducted a jury-waiver colloquy and accepted the defendant's waiver of his right to a jury trial on indictment no. 1281. After the Commonwealth moved for trial on that indictment, the judge, on her own motion, and with the assent of the defendant's counsel, purported to amend indictment no. 1280, the indictment on which there had just been a jury verdict, to include, as a second count, that portion of indictment no. 1281 that alleged a second offense. On September 21, 2000, after a bench trial, the judge found the defendant "guilty on that part of the indictment that alleges a second offense."

2. *Facts.* Sergeant Pamela Greaney of the Essex County sheriff's department testified that on June 24, 1999, she was working with the Lawrence police department and attempting to

---

[1]The text of nos. 1280 and 1281 are set forth in an Appendix to this opinion.

make drug buys in the city of Lawrence. At about 3:15 P.M., she drove to Park Street in Lawrence, accompanied by Deputy Sheriff Joe Santiago. Both were in plain clothes and traveling in an unmarked car. As Greaney drove down Park Street, she saw a couple, a man and a woman, sitting on a wall. At trial Greaney identified the man as the defendant and the woman as one Kristen Grant. The area was residential; the defendant and Grant were sitting in front of a house at 215 Park Street. Greaney pulled over and stopped right in front of the couple, about ten feet away. The windows of the car were down.

After Santiago asked the couple "where we could find heroin," Grant came to the passenger side window. She was about a foot away and was leaning over to speak to Santiago. "Five seconds after she got up," the defendant started looking up and down the street and came to the car "a few seconds behind" Grant. Greaney saw him look up and down Park Street five or six times.

Grant said, "I have four bags." Santiago said, "I will take all four." Greaney testified that, while standing toward the back window of the car, six inches away from Grant, the defendant said, "Hurry up and make the sale so we can get some more."

After Grant handed four bags to Santiago, he handed her four ten dollar bills. Greaney saw Grant and the defendant walking down the street together.

Detective Burokas of the Lawrence police department testified both as a percipient witness and as an expert on the methods used by street-level drug dealers. Asked to describe methods of heroin distribution in the greater Lawrence area, he testified:

> "[T]he prospective dealer would be on the street and across the street or nearby would be the eyes and ears of this dealer, a lookout looking up and down the street to make sure we are not in the area.
>
> ". . .
>
> "The dealer . . . would have the two or three employees, the runner, lookout, money man, either directing them to the dealer or, basically, the dealer would handle everything and have the lookouts around."

He also testified to the roles played in heroin dealing by the "runner" or "mule" and the "money man." He explained that a "dead soldier" was a hiding place for contraband and explained how beepers, cellular phones, and private homes were used in drug dealing.

He testified that from his car, which was ten to fifteen car lengths, or 100 to 150 feet, behind, he saw the undercover car pull over. "[A]lmost instantaneously" a black female approached the passenger side of the undercover car. Less than two seconds after the female got up from the wall where she had been sitting, "a male got up and looked up and down the street." The male constantly scanned the street, paced as the transaction at the car was taking place, and twice spoke with the female at the car.

When the undercover car pulled away, the sheriffs signaled the detectives, who pulled up and arrested the male and female, later determined to be the defendant and Kristen Grant.

3. *Amendment of indictment no. 1280.* As indicated earlier, the Commonwealth had secured two indictments against the defendant covering the defendant's alleged participation as a joint venturer in the sale of drugs to Santiago. One of these indictments, no. 1281, contained a repeat offender component; the other (no. 1280) did not. The Commonwealth elected to go to trial first on no. 1280, the single charge of distribution, without an enhanced-penalty component. After the verdict on no. 1280, the Commonwealth moved for trial "on that indictment that alleges a second offense," i.e., no. 1281. Before commencing trial on indictment no. 1281, the judge purported to amend the indictment on which there had just been a verdict, no. 1280, by engrafting the repeat-offender portion of no. 1281 onto 1280 as a second count. But this amendment was a legal impossibility.

Indictment no. 1281 was a free-standing indictment, separate and complete in itself. It contained its own substantive charge and a repeat-offender, penalty-enhancement component for that charge; the latter thus manifestly was not a repeat-offender component of the separate offense charged in indictment no. 1280. Contrast *Commonwealth* v. *Fernandes,* 430 Mass. 517, 520-523 (1999), cert. denied sub nom. *Martinez* v. *Mas-*

*sachusetts*, 530 U.S. 1281 (2000) (substantive drug offense and repeat-offender penalty-enhancement provision properly set forth in separate counts of a single indictment). As the Supreme Judicial Court explained in *Fernandes*, the repeat-offender component is not a separate crime; thus "the counts for the current offense and for the repeat offense are viewed as parts of one indictment and charge only one crime with a sentence enhancement provision." *Id.* at 520-521.

Even apart from its enhanced penalty component, the language of no. 1281 was not identical to that of no. 1280. It charged the defendant with distribution of heroin or possession of heroin with intent to distribute it. By contrast, no. 1280 charged only distribution. See *Commonwealth* v. *Diaz*, 383 Mass. 73, 82-83 (1981). Thus, what was engrafted onto no. 1280 by the amendment was a distinct substantive indictment on which there had been no trial and no verdict. *Ibid.* But trial on the repeat-offender component of such an indictment may go forward only once there has been a guilty finding on the component of the indictment charging the underlying substantive offense. See G. L. c. 278, § 11A; *Commonwealth* v. *Zuzick*, 45 Mass. App. Ct. 71, 74 (1998).

The Commonwealth could not, therefore, avoid this fundamental problem simply by asserting that it was going to try only the repeat-offender portion of no. 1281 (or what was now being called count two of no. 1280). That is, of course, what the judge and the Commonwealth intended.[2] The result, however, violated G. L. c. 278, § 11A,[3] and was contrary to *Bynum* v. *Commonwealth*, 429 Mass. 705 (1999). In *Bynum*, the court held that repeat-offender components of indictments do not describe independent crimes that may be charged apart from the substantive crimes whose penalties they enhance. *Id.* at 708. General

---

[2]The judge stated: "For the purposes of the record, you are moving for trial on that part of this indictment that alleges it to be a second offense. Is that correct?" To this the prosecutor replied: "That is correct, your honor."

[3]General Laws c. 278, § 11A, inserted by St. 1967, c. 213, provides in pertinent part: "If a defendant pleads guilty or if there is a verdict or finding of guilt after trial, then before sentence is imposed, the defendant shall be further inquired of for a plea of guilty or not guilty to that portion of the complaint or indictment alleging that *the crime charged* is a second or subsequent offense" (emphasis supplied).

Laws c. 94C, § 32(*b*), like G. L. c. 94C, § 32A(*d*), the statute in the *Bynum* case, "does not identify a crime that has a freestanding life of its own." *Bynum* v. *Commonwealth, supra.* See *Commonwealth* v. *Lopez*, 55 Mass. App. Ct. 741, 742 n.1 (2002) ("the repeat offender provision is a sentence enhancement device . . . and does not define a freestanding crime for which an independent sentence may be imposed").

The postverdict amendment of indictment no. 1280, engrafting the repeat-offender portion of indictment no. 1281 as a second count, was therefore fundamentally defective, and the subsequent trial based on that amendment was a legal nullity. See *Commonwealth* v. *Fernandes*, 46 Mass. App. Ct. 455, 456, *S.C.*, 430 Mass. 517 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000) ("if the [repeat-offender] indictment is legally deficient, the court is without jurisdiction to try the case").

Additionally, art. 12 of the Massachusetts Declaration of Rights prohibits the amendment to no. 1280 that added a repeat-offender provision. Upon her own motion, a judge "may allow amendment of the form of . . . [an] indictment if such amendment would not prejudice the defendant . . . ." Mass.R.Crim.P. 4(d), 378 Mass. 849 (1979). An amendment of substance, rather than one of form, however, is impermissible regardless of whether the defendant is prejudiced thereby. See *Commonwealth* v. *Morse*, 12 Mass. App. Ct. 426, 428 (1981) (under G. L. c. 277, § 35A, the now repealed statute on which rule 4[d] is substantially based [see the Reporters' Notes to Mass.R.Crim.P. 4(d), Mass. Ann. Laws, Rules of Criminal Procedure at 34 (Lexis 1997)], the substantive amendment of an indictment was proscribed and defendant was entitled to reversal without the need to show prejudice).

An amendment to add a repeat-offender provision to an indictment is a substantive amendment. "Article 12 requires some statement [in the indictment] regarding the prior conviction before a defendant can be subjected to an enhanced penalty." *Commonwealth* v. *Fernandes*, 430 Mass. at 522. "When [a] statute imposes a higher penalty upon a [subsequent] conviction . . . , it makes the prior conviction of a similar offence a part of the description and character of the offence intended to be

punished; and therefore the fact of such prior conviction must be charged, as well as proved." *Tuttle* v. *Commonwealth*, 2 Gray 505, 506 (1854). A postverdict amendment of an indictment to include a "portion . . . alleging that the crime charged is a second or subsequent offense," G. L. c. 278, § 11A, would "materially change the work of the grand jury." *Commonwealth* v. *Ohanian*, 6 Mass. App. Ct. 965, 966 (1979). It falls to the grand jury to designate the substantive offense charged in an indictment as subject to repeat-offender penalty enhancement. Rule 4(d) does not delegate this responsibility to judges.

Because there was here an amendment of substance, and the defendant was convicted of an offense for which he was not indicted by a grand jury, there was reversible error without regard to prejudice. See *Commonwealth* v. *Barbosa*, 421 Mass. 547, 554 (1995). See also *Commonwealth* v. *Bynoe*, 49 Mass. App. Ct. 687, 692-693 (2000).

4. *Expert testimony as to drug distribution methods ("modus operandi").* Prior to trial, the defendant sought to exclude the anticipated expert testimony of Detective Burokas, arguing, inter alia, that the prejudicial impact of the testimony would outweigh its probative value. At the pretrial hearing, the prosecutor concluded his remarks in favor of admissibility by saying:

> "There are some sophistications to this operation that may slide by the ordinary layperson without the benefit of the testimony of an experienced narcotics investigator . . . ."

Defense counsel responded that the case was simple, the idea of a lookout was self-explanatory, and an expert was unnecessary. The judge ruled that Burokas "may testify as to various methods of distribution of heroin . . . but not limited to one scenario. Specifically, not limited to the one scenario of a lookout-type transaction." Counsel renewed her objection.

The admission of expert testimony to describe the different roles played by individuals involved in the distribution of drugs on the street (commonly denoted "modus operandi") has become a matter of routine approval by Massachusetts and Federal courts, see *Commonwealth* v. *Frias*, 47 Mass. App. Ct. 293, 296 (1999); *United States* v. *Thomas*, 74 F.3d 676, 682-

683 (6th Cir.), cert. denied, 517 U.S. 1162 (1996), and is a matter within the broad discretion of the trial judge. See *Commonwealth* v. *Woods*, 419 Mass. 366, 374 (1995). Expert testimony in drug-related cases, however, generally concerns the behavior of multiple participants, the street value of drugs, the use of various paraphernalia, the significance of quantity (e.g., whether the drugs are for personal use), or combinations thereof, all matters "beyond the ken of the average juror." See *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 669-670 (1992), *S.C.*, 416 Mass. 1001 (1993). The question of admissibility requires a balancing of the helpfulness, necessity, and prejudicial impact of the evidence.

In *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. at 669, ruling on the admission of expert evidence "to describe the different roles played by individuals in the distribution of drugs on the street," we concluded that the judge did not abuse his discretion in permitting the police witness, who was an experienced narcotics investigator, to describe the operations of a street dealer — "a subject beyond the ken of the average juror." *Id.* at 670. The facts in *Dennis* involved three participating youths, interactions between the undercover officer and one of them, the latter's interaction with the defendant, and a runner on a bicycle.

In *Commonwealth* v. *Woods*, 419 Mass. at 374-375, the court noted that the admission of expert testimony is generally allowed if it will aid the jury in reaching a decision, even if the testimony touches on the ultimate issue before the jury. In *Woods*, the police witness testified over objection to his belief that the defendant was involved in a drug transaction. Although the court concluded that this error was harmless in the circumstances in that case, it described the opinion testimony as "unnecessary and impermissibly intru[sive] on the jury's vital fact finding function." *Ibid.*

In *Commonwealth* v. *Robinson*, 43 Mass. App. Ct. 257, 259 (1997), we noted that "[c]haracteristics of two-person street-level drug transactions are beyond the common store of knowledge of the average juror." The facts in that joint venture case, however, involved interaction between a drug addict and four individuals participating in a conversation about a drug buy, two of the individuals acting in tandem, and frequent drug

transactions at the suspect location; unlike the present case, the "two-person operation" in *Robinson* involved "a middleman, holding either the drugs or money, and facilitating communications between the buyer and the dealer." *Id.* at 260. In holding the expert testimony admissible in that case, we commented that "[t]estimony about such operations . . . is helpful to the fact finders and is admissible *so long as it is 'more akin to a description of the modus operandi of street level dealers than a "profile" of a drug dealer' "* (emphasis supplied). *Id.* at 259-260,[4] quoting from *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. at 669.

In *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 577 (1998), a police officer testified that while conducting surveillance he had observed a transaction involving the defendant, another man, a woman customer, the passing of cash from the customer to the man, the spitting out of an item from the man's mouth, and something being handed to the customer. The percipient police witness also testified as an expert, stating that he "believed a drug transaction had taken place" and opining that the relevant behavior was "consistent with" a drug transaction. *Id.* at 580. Describing this area of police expert testimony as both "difficult and confusing," we emphasized the "many potential pitfalls in permitting a percipient police witness . . . to provide expert testimony." *Id.* at 579. We stated that "[i]t is easy for the line between specific observations and expert generalizations to become blurred in these situations. For this reason, when possible, the practice should best be avoided." *Ibid.* The conviction in *Tanner* was affirmed in view of the strength of the Commonwealth's case, notwithstanding our conclusion that some of the opinion testimony had been admitted in error. *Id.* at 580. We stated, "[I]n determining whether particular expert testimony is lawful, the better practice is to focus the analysis on whether the evidence is *explanatory*. The role of an expert witness is to help jurors interpret evidence that lies outside of common experience. . . . So long as expert testimony is directed to that purpose, it is admissible." (Emphasis original.) *Id.* at 581.

---

[4]In *Robinson* the expert testimony was based upon facts in evidence, and the defendant had not claimed or demonstrated that the opinion evidence went beyond the facts adduced at trial.

In *Commonwealth* v. *Dayes*, 49 Mass. App. Ct. 419, 423 (2000), although we affirmed the convictions because of the strength of the Commonwealth's case, we noted error in the admission of modus operandi testimony because it was not "based on the evidence adduced at trial." Finally, in *Commonwealth* v. *Lopez*, 55 Mass. App. Ct. at 746, we reiterated the concern expressed in *Tanner* that the test for this type of expert testimony "ought to be whether the expert testimony was directed to explaining things to the jury that were likely to lie outside of their experience."

We conclude that it was error for the judge to have admitted the expert testimony in this case. Here Burokas offered expert testimony concerning several sorts of cryptic conduct, none of which occurred in this case. There was no evidence here that Grant's sale of forty dollars' worth of heroin to Santiago involved runners, mules, money men, dead soldiers, beepers, cellular phones, or drug houses. There was no evidence here of an elaborate, multiperson operation.

There was evidence that the defendant was looking around as Grant sold drugs to Santiago. But, just as defense counsel argued, there was nothing so unusual about this conduct that the jury could not have decided what weight to give it without expert assistance. Contrast *Commonwealth* v. *Robinson*, 43 Mass. App. Ct. at 260 (unlike the present case, a two-person operation involved a middleman and more complicated situation); *Commonwealth* v. *Frias*, 47 Mass. App. Ct. at 294-297 (detective gave expert testimony concerning "midlevel drug distribution"; the expert testimony was probative because it allowed the jury to understand the nature of the drug operation described by the percipient witnesses). Nothing Burokas testified to in his capacity as expert witness illuminated otherwise mysterious behavior of Grant or the defendant. All the expert testimony did here was to obscure the detail of a simple case against the defendant.

The risk of prejudice arises from the fact that the jury may have given inappropriate weight to the needless expert testimony and have inferred from Burokas's discussion of lookouts, rather than from the defendant's behavior only, that the defendant's looking around had an inculpatory significance. Granted, that

behavior was ambiguous, but not "beyond the ken" of the average juror.

In the circumstances, unlike in cases such as *Woods, Tanner,* and *Dayes,* the erroneous admission of the expert testimony may have unfairly tipped the balance in the Commonwealth's favor. The case against the defendant was potent but not overwhelming.[5] The error was prejudicial, and reversal is required. See *Commonwealth* v. *Flebotte,* 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983) ("An error is nonprejudicial only '[i]f . . . the conviction is sure that the error did not influence the jury, or had but very slight effect . . .' ").

5. *Sufficiency of the evidence as to joint venture.* The evidence was sufficient to prove joint venture between the defendant and Grant in the distribution of heroin. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979); *Commonwealth* v. *Merola,* 405 Mass. 529, 533 (1989). There was evidence that the defendant was present at the scene of the crime, and from his actions the jury could infer that he had knowledge that Grant intended to sell the drugs and that he was assisting her by keeping a lookout. See *Commonwealth* v. *Carmenatty,* 37 Mass. App. Ct. 908, 909 (1994).

"[A] person who acts as a lookout while others are engaged in a criminal enterprise can be convicted on a joint enterprise theory." *Commonwealth* v. *Ward,* 45 Mass. App. Ct. 901, 902 (1998), quoting from *Commonwealth* v. *James,* 30 Mass. App. Ct. 490, 499 n.10 (1991). Contrast *Commonwealth* v. *Saez,* 21 Mass. App. Ct. 408 (1986). The motions for a required finding of not guilty were therefore properly denied.

6. *Conclusion.* On count two of indictment no. 1280 as amended, charging a second and subsequent offense, the judgment is vacated, the finding of guilt is set aside, and that count of the indictment is dismissed. On the charge of unlawful

---

[5]Compare *Commonwealth* v. *Dayes,* 49 Mass. App. Ct. 419, 422-423 (2000), in which a police officer gave expert testimony that out-of-town drug dealers would hook up with local women and use their apartments as bases of operation. Because there was evidence that the defendant had an out-of-town boyfriend, but not that he was a drug dealer, this court held that the admission of the expert testimony was error, but it declined to reverse, because of the strength of the Commonwealth's case.

distribution of a controlled substance under G. L. c. 94C, § 32, the judgment is reversed and the verdict is set aside.

*So ordered.*

APPENDIX.

Indictment no. 1280 reads as follows:

"THE JURORS for the Commonwealth of Massachusetts upon their oath present, that
KELMER MIRANDA

of Lawrence, in said County of Essex, on the twenty-fourth day of June, in the year of our Lord one thousand nine hundred and ninety-nine, at Lawrence in the County of Essex aforesaid did unlawfully distribute a controlled substance in Class A of G. L. chapter 94C, section 31, to wit: heroin, against the peace of the Commonwealth aforesaid, and contrary to the form of the statute in such case made and provided."

\*\*\*

Indictment no. 1281 reads as follows:

"THE JURORS for the Commonwealth of Massachusetts upon their oath present, that
KELMER MIRANDA

of Lawrence, in said County of Essex, on the twenty-fourth day of June, in the year of our Lord one thousand nine hundred and ninety-nine, at Lawrence in the County of Essex aforesaid not being authorized by law, did knowingly or intentionally manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance in Class A of G. L. chapter 94C, section 31, to wit: heroin; said defendant having been previously convicted of manufacturing, distributing, dispensing, or possessing with intent to manufacture, distribute or dispense a controlled substance as defined by section 31 of G. L. chapter 94C, under this or any prior law of the commonwealth or of any offense of any other jurisdiction, federal, state, or territorial, which is the same as or necessarily includes the elements of said offense, against the peace of the Commonwealth aforesaid, and contrary to the form of the statute in such case made and provided."