COMMONWEALTH vs. JOSEPH L. DENNIS.

No. 91-P-1251.

Plymouth. October 6, 1992. - December 7, 1992.

Present: FINE, JACOBS, & PORADA, JJ.

Further appellate review granted, 414 Mass. 1103 (1993).

*Controlled Substances. Evidence,* Expert opinion. *Joint Enterprise. Practice, Criminal,* Required finding.

At a criminal trial, the judge did not abuse his discretion in permitting a police officer, who was an experienced narcotics investigator, to testify to matters within his general knowledge concerning the characteristics and operations of street dealers in illegal drugs. [669-670]

Where, at the trial of an indictment for trafficking in cocaine, the evidence was insufficient to permit a finding that the defendant, either exclusively or jointly with three juveniles, was in constructive possession of a quantity of the drug found in an abandoned automobile near where he was arrested, the defendant was to be resentenced for the lesser included offense of possession of the cocaine which he discarded when stopped by police. [670-672]

Evidence at the trial of an indictment charging the defendant, in three counts, with contributing to the delinquency of a minor, was insufficient to permit a finding that he was engaged in trafficking in cocaine with any of the three juveniles arrested with him. [672-673]

INDICTMENTS found and returned in the Superior Court Department on December 30, 1988.

The cases were tried before *Robert W. Banks,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the defendant.

*John E. Bradley, Jr.,* Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant was convicted by a jury in the Superior Court of trafficking in more than fourteen but less than twenty-eight grams of cocaine (G. L. c. 94C, § 32E[*b*][1]) and of three counts of contributing to the delinquency of a child (G. L. c. 119, § 63). On appeal, he claims the trial judge erred in admitting in evidence the testi-

mony of a police officer as to how street level drug dealers conduct their business and in denying the defendant's motions for required findings of not guilty. We reverse the judgments based on the sufficiency of the evidence and remand the case for sentencing on the lesser included offense of possession of cocaine on the indictment for trafficking in cocaine.

We summarize the material evidence. While conducting a surveillance of a particular neighborhood in Brockton, three police officers observed three youths and the defendant in front of 15-17 Turner Street. During a period of about one hour, the police observed three to five cars stop in front of this address. The driver would either approach or be approached by one of the three youths. After a brief conversation, the driver would leave in his car. After making these observations, one of the officers, Thomas, was selected to make an undercover buy. He parked his car across the street from 15-17 Turner Street and approached the two youths on the stairs leading to the house. Thomas asked to buy a bag of pot. One of the youths, Hart, left the stairs and walked out into the street near Thomas's car. Thomas observed Hart look in the direction of the defendant, who was standing on the sidewalk in front of the driveway leading to the house. Thomas saw the defendant shake his head from left to right. Hart then looked back at Thomas and said, "Can't do it, man." Thomas then drove around the block and pulled up in front of the house a second time. On this occasion, Thomas pulled out $25 in cash and told Hart that he needed a bag of dope. An unidentified youth appeared on a bicycle and told Hart to sell Thomas the dope. After asking Thomas to get out of the car, Hart did complete the sale of a substance, which was analyzed as heroin. During this encounter, the defendant and another youth remained standing near the corner of the house on the sidewalk in front of the driveway. Thomas then drove off and the unidentified male left the area. The other police converged on the scene and placed Hart and his companion on the stairs under arrest. While the police were doing so, the defendant and the youth with him

started to walk away. The police asked them to stop. They did not heed the first request. When the request was repeated, the defendant and his companion stopped near a trash can located on the sidewalk. One of the officers observed both individuals throw some packets from their hands into the barrel. When the officer looked inside the trash can, he observed five small square blue baggies on top of other trash. Each of the baggies contained one-quarter gram of cocaine. A search of the defendant and the three youths at the scene led to the recovery of $192 from the defendant; a bundle of heroin stamped "Power-95" and $186 from Hart; three packets of cocaine, ten bags of heroin stamped "Power-95," and $192 from the youth on the stairs with Hart; and a small bag of marijuana and $144 from the youth standing with the defendant near the driveway.

The police returned to the scene later in the day and searched an abandoned vehicle which was parked in the driveway at 15-17 Turner Street. In the car they found two plastic bags. Each of the bags contained small blue packets, which were identical to those which had been retrieved from the trash can. The packets, seventy-seven in all, were found to contain a total of 21.3 grams of high purity cocaine, or about one-quarter gram each. One of the officers testified that the number of packets indicated they were intended for sale and not personal use.

The police officers did not see the defendant hand anything to anyone at the scene or receive anything from anyone. The officers also did not see the defendant or the three youths place anything into or remove anything from the car.

Thomas, an experienced narcotics investigator, described the operations of street dealers. He testified that the distribution method commonly used in the area in question was the "runner" or "buffer" system, in which the principal dealer in order to reduce the risk factor will use a runner or buffer to complete the sale. The dealer will allow the runner to hold a small quantity of the drugs and carry out the transfer of the drugs. The runner will also hold the currency until he has acquired a large amount and then he will pass it on to the

principal dealer. He also opined that to reduce the risk factor, the dealer will hide his stash in any number of different places, such as an "old building" or "trash can."

We now turn to examine the defendant's claims of error.

1. *Expert opinion.* The defendant argues that it was error to admit in evidence the police officer's testimony as to how street level dealers conduct their business on the ground that this testimony was akin to inherently prejudicial "profile testimony," an expert's opinion as to certain characteristics common to some or most of the individuals who commit a particular crime. See *Commonwealth* v. *Day,* 409 Mass. 719, 723 (1991) (expert opinion that the defendant fit profile of individual who abused children deemed inadmissible because the mere fact that a defendant fits the profile does not tend to prove he committed the crime). Here, the officer's testimony was more akin to a description of the modus operandi of street level dealers than a "profile" of a drug dealer. See *United States* v. *Cross,* 928 F.2d 1030, 1050 & n.66 (11th Cir.) (distinction between modus operandi and profile testimony discussed), cert. denied, 112 S. Ct. 594 (1991). While there appears to be no Massachusetts case which has ruled on the admission of expert evidence to describe the different roles played by individuals in the distribution of drugs on the streets, narcotics investigators have been permitted to offer their opinions as experts in drug cases on a number of subjects. See *Commonwealth* v. *Davis,* 376 Mass. 777, 788 (1978) (small manila envelopes seized in a raid were used for the bagging of heroin); *Commonwealth* v. *Johnson,* 410 Mass. 199, 202 (1991) (amount of cocaine possessed by defendant was inconsistent with personal use); *Commonwealth* v. *Johnson,* 413 Mass. 598, 603-604 (1992) (packaging of cocaine consistent with intent to distribute); *Commonwealth* v. *Tucker,* 2 Mass. App. Ct. 328, 330 (1974) (drug paraphernalia found in an apartment inconsistent with personal use); *Commonwealth* v. *Fiore,* 9 Mass. App. Ct. 618, 624 (1980) (street value of cocaine); *Commonwealth* v. *Munera,* 31 Mass. App. Ct. 380, 385 (1991) (chunk cocaine wrapped in a dollar bill in defendant's pocket more consistent with a

dealer's sample than with personal use). The Federal courts have an equally impressive history of allowing narcotics investigators to testify as experts in narcotic cases and have allowed the kind of expert evidence admitted in this case. See *United States* v. *Young*, 745 F.2d 733, 760-761 (2d Cir. 1984), cert. denied, 470 U.S. 1084 (1985); *United States* v. *Boissoneault*, 926 F.2d 230, 232-233 (2d Cir. 1991) ("we have repeatedly upheld the use of expert testimony by government agents to describe the . . . operating methods of narcotics dealers").

We conclude the judge did not abuse his discretion in permitting the police officer, who was an experienced narcotics investigator, to describe the operations of a street dealer, a subject beyond the ken of the average juror. See *Commonwealth* v. *Pikul*, 400 Mass. 550, 553 (1987). See also *United States* v. *Theodoropoulos*, 866 F.2d 587, 592 (3d Cir.) ("In dealing with . . . illegal narcotics operations, a lay jury is unlikely to have knowledge as to the structure of the organization or the interrelationships between the participants"), mandamus denied, 489 U.S. 1009 (1989). The judge was careful to limit the officer's testimony to general information about the characteristics and operations of a street dealer and did not permit the officer to express his opinion in terms of the activity observed by him at 15-17 Turner Street. The jurors were left to draw their own conclusions whether the defendant or other members of the group were engaged in the distribution of drugs. See *United States* v. *Boissoneault*, 926 F.2d at 233.

2. *Sufficiency of the evidence.* The defendant concedes that the evidence was sufficient to establish that the defendant was in possession of one or more of the five blue packets of cocaine, containing 1.3 grams of cocaine, found in the trash barrel but argues that the evidence was insufficient to prove the defendant guilty of trafficking in cocaine or contributing to the delinquency of a minor.

The Commonwealth based its case on the theory that the defendant was in the constructive possession of the 21.3 grams of cocaine found in the abandoned automobile, either

exclusively or jointly with the three youths. To establish constructive possession, the Commonwealth had to prove that the defendant had knowledge of the cocaine in the abandoned car and the ability and the intent to exercise dominion over it. *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 617-618 (1990), *S.C.*, 410 Mass. 1005 (1991). The Commonwealth claims it met its burden by establishing the defendant's presence for more than one hour in close proximity to the car where the drugs were hidden, the defendant's possession of one or more of the five blue packets of cocaine which matched those in the car and $192 in cash, his headshake to Hart, who sold heroin to Officer Thomas, and the defendant's failure to heed the officer's request to stop. Viewing this evidence in the light most favorable to the Commonwealth, we conclude that the evidence was insufficient to permit a finder of fact to conclude beyond a reasonable doubt that the defendant had possession of the narcotics found in the abandoned car. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 687 (1991).

The defendant's presence in close proximity to where the drugs were found, standing alone, does not establish a nexus between the drugs in the car and the defendant. *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 779-781 (1991). *Commonwealth* v. *Booker*, 31 Mass. App. Ct. 435, 437-439 (1991). Nor does the fact that the defendant had in his possession one or more of the five packets of cocaine which matched the stash in the car. See *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 494-497 (1991). From this evidence, one could infer that the defendant was either a buyer or seller. See *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 539 (1990); *Commonwealth* v. *James*, 30 Mass. App. Ct. at 497. The amount of cash found on the defendant's person was not significant. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 305 (1991) ($1,406 in cash found on the defendant's person); *Commonwealth* v. *Lopez*, 31 Mass. App. Ct. 547, 551-552 (1991) (unemployed defendants found in possession of large amounts of cash). Compare *Commonwealth*

v. *Arias*, 29 Mass. App. Ct. at 619 n.10 (small amounts of cash found on each of the unemployed defendants). The headshake to Hart is at best inconclusive, see *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 411-412 (1986) (looking up and down street ambiguous and inconclusive), for while it might suggest that the defendant and Hart were engaged in a joint venture, it does not establish the required nexus between the cocaine in the automobile and the defendant. Hart was not found to be in possession of cocaine, but only of heroin, which is what he sold to Officer Thomas at the direction of someone other than the defendant. Finally, the scales are not tipped by the failure of the defendant to heed the officer's first request to stop. This conduct is as suggestive of the defendant's awareness that he was in possession of cocaine on his person as it is of trafficking. In addition, the police testified that they did not see the defendant or any of the three youths enter or leave the car. There was no evidence as to who owned or resided at 15-17 Turner Street or to whom the car belonged. Based on this record, the motion for a required finding of not guilty at the close of the Commonwealth's case should have been allowed as to the trafficking offense but denied as to the lesser included offense of possession of cocaine.

We also conclude that the evidence was insufficient to establish the defendant's guilt on the three counts of contributing to the delinquency of a child. The Commonwealth's case was predicated on the ground that the defendant was engaged in trafficking in narcotics with the three youths. The police testified that they did not see the defendant hand anything to the three youths, receive anything from the three youths, or approach any of the cars that pulled up during their surveillance. His mere presence in close proximity to the youths would not suffice to establish his guilt. *Commonwealth* v. *Saez*, 21 Mass. App. Ct. at 411. Compare *Commonwealth* v. *Lopez*, 31 Mass. App. Ct. 547, 551-552 (1991). Although Officer Thomas testified that Hart refused to deal with him during his first attempt to buy drugs after he observed Hart look in the direction of the defendant and

saw the defendant shake his head, this gesture by the defendant is at best ambiguous and inconclusive in establishing the delinquency charge. See *Commonwealth* v. *Saez*, 21 Mass. App. Ct. at 411-412. Hart did not look to the defendant for approval on the second occasion when he completed the sale to Officer Thomas. Nor did Hart have in his possession any of the packets of cocaine matching those found in the car and those the defendant allegedly discarded into the trash can. There was no other evidence linking the defendant to the activity of three youths. The motion for required findings of not guilty should have been allowed.

Accordingly, the judgment on the indictment for contributing to the delinquency of a child is reversed, the verdict on each count is set aside, and judgment is to enter for the defendant. The judgment on the indictment for trafficking in cocaine under G. L. c. 94C, § 32E(*b*)(1), is vacated, and the case is remanded to the Superior Court for sentencing on the lesser included offense of possession of cocaine under G. L. c. 94C, § 34.

*So ordered.*