## Commonwealth *vs.* Kelmer Miranda.

Essex. March 1, 2004. - May 27, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Practice, Criminal,* Amendment of indictment or complaint, Indictment, Required finding. *Controlled Substances. Evidence,* Expert opinion, Joint enterprise. *Witness,* Expert. *Habitual Offender. Joint Enterprise.*

A Superior Court judge acted within her discretion in amending, posttrial, an indictment for distribution of heroin to include the repeat-offender component of a second indictment for distribution of heroin or possession of heroin with intent to distribute, where the amendment was one of form, not of substance; where it did not prejudice the defendant; and where it did not materially change the work of the grand jury. [787-790]

A Superior Court judge's denial of a criminal defendant's motions for a required finding of not guilty was proper where the evidence was sufficient for the jury to find the defendant guilty beyond a reasonable doubt of distribution of heroin on the theory of joint venture. [790-792]

A Superior Court judge did not abuse her discretion in admitting expert testimony describing street-level methods of heroin distribution, because the judge logically could have reasoned that the expert testimony offered by the Commonwealth would assist the jury in understanding how the defendant could have been an active participant in the charged drug transaction while appearing merely to be a passive bystander, and because the defendant could demonstrate no resulting prejudice. [792-795]

Indictments found and returned in the Superior Court Department on June 28, 2000.

The cases were tried before *Christine M. McEvoy*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Gregory I. Massing*, Assistant District Attorney, for the Commonwealth.

*David B. Mark* for the defendant.

Ireland, J. The defendant, Kelmer Miranda, was charged in three separate indictments with distribution of heroin (first indictment), distribution of heroin or possession of heroin with intent to distribute, as a second or subsequent offense (second

indictment), and conspiracy to violate the controlled substance laws.[1] After a Superior Court jury convicted the defendant of distribution of heroin on the theory of joint venture, the judge, with the defendant's consent, amended the first indictment to include, as a second count, the repeat-offender component of the second indictment.[2] The defendant waived his right to a jury trial on the repeat-offender component of the charge and was convicted of being a repeat offender in a bench trial. The judge sentenced the defendant only for his conviction of distribution of heroin as a second offense.

On appeal, the Appeals Court concluded that the amended indictment was a "legal impossibility" and vacated the defendant's conviction as a repeat offender. *Commonwealth* v. *Miranda*, 59 Mass. App. Ct. 378, 381, 388 (2003). The Appeals Court also reversed the judgment of conviction of distribution of heroin on the ground that the judge erred in admitting expert testimony concerning characteristics of street-level drug distribution. See *id.* at 387, 388-389. We granted the Commonwealth's application for further appellate review. Because we conclude that the judge did not err in amending, posttrial, the first indictment to include the repeat-offender component of the second indictment, and that the judge properly denied the defendant's motions for a required finding of not guilty and did not abuse her discretion in admitting expert testimony, we affirm the judgments of the Superior Court.

*Facts.*

We summarize the facts as the jury could have found them, in the light most favorable to the Commonwealth, reserving certain details for discussion in connection with the specific issues raised. *Commonwealth* v. *Sanna*, 424 Mass. 92, 93 (1997). On June 24, 1999, Deputy Sheriffs Pamela Greaney and Joe Santiago of the Essex County sheriff's department were assigned to an undercover narcotics operation in Lawrence. At about 3:15 P.M., they drove in an unmarked automobile to Park

---

[1]The conspiracy indictment was nol prossed.

[2]The judge expressed her concern that if the subsequent offense charge were contained in a separate indictment, the defendant's probation record might reflect two separate crimes when he had in fact been charged with only a single crime.

Street in a residential area of Lawrence. Detective Brian Buro-
kas of the Lawrence police department, accompanied by two
other detectives, followed in an unmarked car approximately
one hundred to 150 feet behind. As the deputies rode down
Park Street, they saw a man and a woman, identified at trial as
the defendant and Kristen Grant, sitting on a wall. Greaney
pulled over to the curb, approximately five to ten feet away
from the couple. The windows of the car were down.

After Santiago asked the couple "where [they] could find
heroin," Grant walked to the passenger side window. Seconds
later, the defendant got up and began looking up and down the
street. Greaney saw the defendant look up and down Park Street
five or six times. The defendant "[s]tepped to the curbing,
looked down, stepped back, looked this way, stepped back to
the curbing and looked up and down the street periodically. He
was constantly scanning the street." Grant said, "I have four
bags." Santiago told Grant that he would "take all four."

The defendant, who, throughout the transaction, kept pacing
and looking up and down Park Street, came over to the car and,
standing six inches away from Grant, stated, "Hurry up and
make the sale so we can get some more." Grant then "[q]uickly
pull[ed] four bags out of her bra," handed them to Santiago,
and he handed her four ten dollar bills. The defendant and
Grant walked down the street together. Burokas and the other
detectives, who had observed the sale from a distance of one
hundred feet, arrested the defendant and Grant.

*Procedural Background.*

The first of the two indictments charging the defendant with
violations of G. L. c. 94C, § 32, alleged that the defendant "did
unlawfully distribute a controlled substance in Class A of G. L.
[c. 94C, §] 31, to wit: heroin." The second indictment alleged:

"[The defendant] did knowingly or intentionally
manufacture, distribute, dispense, or possess with intent to
manufacture, distribute, or dispense . . . heroin; said
defendant having been previously convicted of manufactur-
ing, distributing, dispensing, or possessing with intent to
manufacture, distribute or dispense a controlled substance
as defined by [G. L. c. 94C, § 31], under this or any prior

law of the commonwealth or of any offense of any other jurisdiction, federal, state, or territorial, which is the same as or necessarily includes the elements of said offense."

At a pretrial hearing, the Commonwealth indicated its intent to go forward on the distribution charge contained in the first indictment, and to nol pros the conspiracy charge. The judge noted that it was unusual for the repeat-offender component of the distribution charge to be contained in the second indictment.

The defendant filed a pretrial motion to exclude expert testimony of Detective Burokas regarding methods used in the distribution of heroin in the Lawrence area. At a hearing on the motion, defense counsel argued, inter alia, that the lookout scenario presented by the case was a simple concept that did not require special expertise. Defense counsel also asserted that "having [the expert] testify to the exact scenario . . . in this case is far more prejudicial than it is probative." The judge ruled that Burokas could testify as to "various methods of distribution of heroin," but "not limited to one scenario of a lookout-type transaction."[3]

At trial, Burokas testified both as a percipient witness and as an expert on the methods used by street-level drug dealers.[4] Asked to describe methods of heroin distribution in the greater Lawrence area, he testified, over objection: "[T]he prospective dealer would be on the street and across the street or nearby would be the eyes and ears of this dealer, a lookout looking up and down the street to make sure [the police] are not in the area." When asked whether a "street deal" takes place on the street, Burokas stated that it usually does, and further explained: "The dealer . . . would have the two or three employees, the runner, lookout, money man, either directing them to the dealer or, basically, the dealer would handle everything and have the

---

[3]Burokas had been a police detective since 1980, received specialized training in the area of narcotics investigations, participated in over 500 investigations involving controlled substances, conducted surveillance of more than one hundred controlled buys of narcotics and, as an undercover officer, purchased controlled substances on the street.

[4]The judge cautioned Burokas not to express any opinions whether his observations "in this particular case [were] consistent with a drug transaction or that the defendant's conduct was consistent with any part of a drug transaction, including, but not limited to, his role as a so-called lookout."

lookouts around." Burokas also testified as to more sophisticated methods sometimes used by dealers, such as pagers or cellular telephones, and stated that lookouts sometimes hid inside houses or apartments, trying to spot police or potential customers.[5]

*Discussion.*

1. *Amendment of indictment.* The defendant claims that the judge erred in amending, postverdict, the single indictment on which he was tried by adding the repeat-offender component of the second indictment. We disagree. It was within the judge's discretion to amend the indictment in the manner in which she did. Under Mass. R. Crim. P. 4 (d), 378 Mass. 849 (1979), a judge has discretion to allow an amendment of an indictment if the amendment is one of form, not substance, and if the amendment will "not result in prejudice." See *Commonwealth* v. *Knight*, 437 Mass. 487, 491-492 (2002). Article 12 of the Declaration of Rights of the Massachusetts Constitution adds the requirement that the amendment not "materially change[] the work of the grand jury." *Id.* at 492. Here, the amendment satisfied all three requirements.

As a preliminary matter, we note that under G. L. c. 278, § 11A,[6] the defendant was required to be tried in the manner

---

[5]Burokas further stated that often street-level drug transactions involved multiple persons: a runner (who, on receiving a cue from a dealer, would "run and get the controlled substance"), a money man (who, "while the runner is getting the controlled substance . . . would go in a different direction with the money"), and a mule (whose function is similar to that of a runner).

[6]General Laws c. 278, § 11A, sets forth the procedure for prosecuting repeat offenders:

"If [the] defendant . . . is tried before a jury [on the substantive offense], no part of the complaint or indictment which alleges that the crime charged is a second or subsequent offense shall be read or shown to the jury or referred to in any manner during the trial; . . . if there is a verdict or finding of guilty after trial, then before sentence is imposed, the defendant shall be further inquired of for a plea of guilty or not guilty to that portion of the complaint or indictment alleging that the crime charged is a second or subsequent offense. . . . [I]f he pleads not guilty thereto, he shall be entitled to a trial by jury of the issue of conviction of a prior offense [and] [u]pon the return of a verdict, after the separate trial of the issue of conviction of one or more prior offenses, the court shall impose the sentence appropriate to said verdict."

that he was — first, on the underlying substantive crime and, then, in a separate proceeding, on that component of the charge referring to the crime as a second or subsequent offense. Our decision in *Bynum* v. *Commonwealth*, 429 Mass. 705 (1999), clarifies that the repeat-offender statutes, such as G. L. c. 94C, § 32 (*b*), do not identify freestanding crimes, but concern "solely the sentence of a person convicted of a [current] violation . . . who has previously been convicted of at least one similar drug offense. The prior offense is not an element of the crime for which a defendant is charged but concerns the punishment to be imposed if he is convicted [of the current offense] and the prior offense is proved."[7] *Id.* at 708-709.

We now consider the propriety of the amendment. First, the amendment of the first indictment to include the repeat-offender component of the second indictment was a matter of form, not substance. See *Commonwealth* v. *Knight, supra* at 492, quoting *Commonwealth* v. *Snow*, 269 Mass. 598, 606 (1930) (amendment is matter of form when it is "not essential to the description of the crime charged"); *Commonwealth* v. *Fernandes*, 430 Mass. 517, 520 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000) ("the repeat-offender statutes are sentence enhancement provisions only and do not identify a freestanding crime"). The amendment merely combined the first indictment and the repeat-offender component of the second indictment into a single instrument; it did not alter the nature of the charges or the jeopardy the defendant faced.[8] See *id.*

Second, the amendment of the indictment did not prejudice

---

[7]Communications at the pretrial hearing between the prosecutor and the judge demonstrate that the Commonwealth intended to go forward against the defendant on only one crime, that of distributing heroin as a repeat offense. The repeat-offender component, thus, should have appeared as a second count of the first indictment. See *Commonwealth* v. *Fernandes*, 430 Mass. 517, 520-521 (1999), cert. denied sub nom. *Martinez* v. *Massachusetts*, 530 U.S. 1281 (2000). The better practice also would have been to have the repeat-offender component specify the date of the prior offense, the date of the prior conviction, and the court in which the conviction was obtained. *Id.* at 523.

[8]Additionally, where, as here, the defendant's conviction on the original indictment would "bar the subsequent prosecution of the defendant based on the amended indictment," the amendment is considered to be a matter of form, not substance. *Commonwealth* v. *Knight*, 437 Mass. 487, 492-493 (2002), citing *Commonwealth* v. *Snow*, 269 Mass. 598, 609 (1930). See *Com-*

the defendant. "A defendant is not prejudiced by an amendment if the 'language of the indictment inform[s] the [defendant] of the charge against him.' " *Commonwealth* v. *Knight, supra* at 493, quoting *Commonwealth* v. *Murphy,* 415 Mass. 161, 165 (1993). Read together, the indictments adequately notified the defendant of the crime for which he was being charged (one crime of distribution of heroin with a sentence enhancement) and of the jeopardy he faced. See *Commonwealth* v. *Fernandes, supra* at 521-522, citing *Wilde* v. *Commonwealth,* 2 Met. 408, 410 (1841) (wording of indictments is consistent with purpose of *Wilde,* "which is to be certain that the defendant understands that the Commonwealth alleges the existence of a prior conviction that may subject the defendant to enhanced punishment"). Moreover, the record shows that not only was the defendant fully informed of the nature of the crime with which he was being charged, but he also assented to the amendment he now challenges.[9]

Possibly due to confusion over the requirements of *Bynum* and *Fernandes,* the Commonwealth presented to the grand jury what are, essentially, elements of one crime in two separate indictments. The judge's decision to combine the first indictment with the repeat-offender component of the second indictment was a proper way to correct the Commonwealth's mistake to avoid possible problems for the defendant if it appeared that

---

monwealth v. *Murphy,* 415 Mass. 161, 165 (1993), quoting *Commonwealth* v. *Dellamano,* 17 Mass. App. Ct. 156, 159 (1983), *S.C.,* 393 Mass. 132 (1984).

[9]There is no merit to the defendant's claim that his trial counsel was ineffective in failing to challenge the sufficiency of the first indictment, as amended, or in allowing the defendant to assent to the amendment. Although the performance of the defendant's trial counsel indicates that she may have been unfamiliar with the recent pronouncements by this court in *Bynum* v. *Commonwealth,* 429 Mass. 705 (1999), and *Commonwealth* v. *Fernandes, supra,* the defendant was not prejudiced as a result of this shortcoming. See *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977) (to demonstrate ineffective assistance of counsel, defendant must establish that better work might have "accomplished something material for the defense"). Had the defendant objected to the amendment, his second trial would have gone forward on the repeat-offender component of the second indictment. Principles of double jeopardy would not have operated to prevent the judge from finding the defendant guilty of distribution of heroin as a second or subsequent offense under the sentence enhancement component of the second indictment. As indicated above (see 787-788 & note 6, *supra*), the statutory scheme requires a second and separate trial on the repeat-offender portion of the charge.

he was convicted of two separate offenses. See note 2, *supra.* Nothing in *Bynum* or *Fernandes* prevents the procedure here, a trial on the underlying substantive offense and, after conviction, a separate trial to obtain an enhanced penalty because the defendant is a repeat offender. To the contrary, G. L. c. 278, § 11A, requires this procedure. Consistent with the holding in *Bynum,* the defendant received a single sentence. See *Bynum* v. *Commonwealth, supra* at 710 (defendant may not be sentenced on underlying offense and, years later in separate proceeding, receive second sentence for being repeat offender).

Last, we conclude that amending the first indictment did not materially change the work of the grand jury. A review of the two indictments permits only one conclusion, namely that the grand jury intended to charge the defendant with distribution of heroin on June 24, 1999, as a second or subsequent offense. The consolidation did nothing to change their work.[10]

2. *Denial of motions for required finding of not guilty.* The defendant claims that, because the evidence established nothing more than his presence during the drug transaction, the judge erred in denying his motions for a required finding of not guilty filed at the close of the Commonwealth's evidence and at the close of all the evidence. Thus, the defendant contends, no trier of fact rationally could have concluded that the defendant was

---

[10]The defendant points out that the language of the second indictment, charging the defendant with distribution of heroin or possession of heroin with intent to distribute it, was not identical to the language of the first indictment, charging the defendant with distribution of heroin only. He claims, therefore, that the second indictment was not a repeat-offender component of the separate offense charged in the first indictment. We disagree.

The second indictment charged every manner in which a person could violate G. L. c. 94C, § 32 (*a*). "Where the statute disjunctively prescribes several acts in a series of acts, all of which are alleged in the [indictment], then the Commonwealth may prove the violation of the statute by proof of the performance by the defendant of any one of the said acts." *Commonwealth* v. *Murphy, supra* at 164, quoting *Commonwealth* v. *Martin,* 304 Mass. 320, 322 (1939). Thus, the list of alternative means alleged in the second indictment included the specific means set forth in the first indictment. Here, "a reader of . . . the indictment[s] would require practiced obtuseness not to understand the nature of the offense charged," *Commonwealth* v. *Fernandes, supra* at 523, quoting *Commonwealth* v. *Fernandes,* 46 Mass. App. Ct. 455, 459 (1999), namely that the defendant violated G. L. c. 94C, § 32 (*a*), as alleged in the first indictment, "having been previously convicted" of a similar violation of the controlled substance laws as alleged in the second indictment.

guilty of distribution of heroin on the theory of joint venture. We are not persuaded by the defendant's arguments. The defendant's contention concerns the weight and credibility of the evidence, "a matter wholly within the province of the jury." *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992).

Viewing the evidence and reasonable inferences from that evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence for a rational jury to find the defendant guilty beyond a reasonable doubt of distribution of heroin on a theory of joint venture between Grant and the defendant. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979) ("question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" [emphasis in original]). See *Commonwealth* v. *Johnson*, 410 Mass. 199, 200 (1991); *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). "The test [for joint venture] is whether [the] defendant was (1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Sabetti*, 411 Mass. 770, 779 (1992), quoting *Commonwealth* v. *Costa*, 407 Mass. 216, 224 (1990). See *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 242 (1982) (Commonwealth not required to show that defendant participated in actual commission of crime; it is sufficient to show that defendant "somehow participated in the venture to the extent that [he] sought to make it succeed"). "Knowledge or intent . . . may be proved by inference from all the facts and circumstances developed at trial." *Commonwealth* v. *Costa, supra* at 225. See *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977) (person's intent may be shown "from circumstances and need not, and often cannot, be established by direct evidence"); *Commonwealth* v. *Santiago*, 30 Mass. App. Ct. 207, 217 (1991) ("It is rare that one's state of mind can be proved by direct evidence"). "[A] person who acts as a lookout while others are engaged in a criminal enterprise can be convicted on a joint enterprise theory." *Commonwealth* v. *Ward*, 45 Mass. App. Ct. 901, 902 (1998), quoting *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 499 n.10 (1991).

The Commonwealth's evidence demonstrated conclusively that Grant sold heroin to undercover officers and that the defendant was present at the scene of the crime. Evidence was also presented from which a reasonable jury could infer that the defendant knew that Grant intended to sell the heroin, and that he assisted her in doing so by serving as a lookout. The defendant got up a few seconds after Grant approached Santiago and Greaney's automobile. He immediately started looking up and down the street and continued to do so throughout the transaction. He was constantly stepping up and down the curb and "scanning the street." While looking around one time during a drug transaction may suggest "nothing more than that he probably realized that he was a witness to a crime," *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408, 412 (1986), here the jury reasonably could infer that the defendant's conduct, coupled with his directive to Grant to "[h]urry up and make the sale so we can get some more," was that of a knowing and active participant in a drug transaction.[11] *Commonwealth* v. *Sabetti, supra* at 779-780. See *Commonwealth* v. *Ward, supra* at 902; *Commonwealth* v. *Beckett, supra* at 341 (inferences drawn by jury "need only be reasonable and possible," not "necessary or inescapable"). The defendant's motions for a required finding of not guilty were properly denied.

3. *Admission of expert testimony.* The defendant challenges the admission in evidence of Burokas's expert testimony describing street-level methods of heroin distribution. In particular, the defendant argues that Burokas should not have been allowed to explain the function of a lookout, because it is a "simple" concept "not beyond a layperson's experience." He further claims that the prejudicial impact of Burokas's testimony outweighed its probative value. We disagree.

Otherwise qualified expert testimony is admissible if, "in the

---

[11] The defendant's reliance on *Commonwealth* v. *Saez*, 21 Mass. App. Ct. 408 (1986), is misplaced. In the *Saez* case, the defendant "looked up and down the street [no] more than once during the minute-long transaction," and later, when leaving a building with his alleged coventurer, "looked up and down the street only once." *Id.* at 412. The court held that this evidence was insufficient to show that the defendant acted as a lookout. *Id.* Here, by contrast, there was significant additional evidence that was sufficient to permit a rational jury to infer that the defendant acted as a lookout.

judge's discretion, the subject [of such testimony] is not within the common knowledge or common experience" of the trier of fact, and the testimony will assist the trier of fact in determining a fact in issue or in understanding the evidence. *Commonwealth* v. *Francis*, 390 Mass. 89, 98 (1983), and cases cited. See P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 7.6.1, at 385 (7th ed. 1999), citing *Commonwealth* v. *Dockham*, 405 Mass. 618, 628 (1989); *LeBlanc* v. *Ford Motor Co.*, 346 Mass. 225, 231-232 (1963). See also Proposed Mass. R. Evid. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise"). In cases where expert testimony "will be of assistance, it will be admissible, in the judge's discretion, even though the matter may be within the knowledge of the trier of fact."[12] P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence, *supra* at § 7.6.1, at 385. See *Commonwealth* v. *Francis*, *supra* at 99 (trial judge's rulings regarding admissibility of expert evidence are given "great deference"); *Commonwealth* v. *Trainor*, 374 Mass. 796, 801-802 (1978) ("the line between matters of common knowledge and matters beyond common knowledge often is not precise"; if proffered expert testimony may "give the jury appreciable assistance in resolving a fact question, it is admissible in the judge's discretion").

It is settled law that trial judges have broad discretion to allow the use of narcotics investigators as experts in drug cases. *Commonwealth* v. *Johnson*, 413 Mass. 598, 604 (1992). *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991), and cases

---

[12]In determining what is a "proper subject of expert testimony," the courts have "focused increasingly on whether, in the wide discretion of the trial judge, the subject was one on which the opinion of an expert would have been of assistance to the jury without undue prolongation of the trial and undue exploration of collateral matters." *Commonwealth* v. *Cordero*, 34 Mass. App. Ct. 923, 923-924 (1993), quoting *Commonwealth* v. *Gregory*, 17 Mass. App. Ct. 651, 654 (1984). See *Commonwealth* v. *Francis*, 390 Mass. 89, 98 (1983). In some cases, expert testimony may be appropriate in the discretion of the trial judge, even though not necessary. P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 7.6.1, at 385-386 (7th ed. 1999), citing *Bernier* v. *Boston Edison Co.*, 380 Mass. 372 (1980).

cited. See, e.g., *Commonwealth* v. *Frias*, 47 Mass. App. Ct. 293, 296 (1999) (experienced narcotics investigators may "describe in general terms how drug transactions are carried out on the street level" to help jury understand "the evidence they have heard of particular conduct on the street"); *Commonwealth* v. *Robinson*, 43 Mass. App. Ct. 257, 259 (1997) ("Characteristics of two-person street-level drug transactions are beyond the common store of knowledge of the average juror," and thus, testimony about such transactions is helpful to jury); *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 669-670 (1992), *S.C.*, 416 Mass. 1001 (1993) (no abuse of discretion where judge allowed experienced narcotics investigator "to describe the different roles played by individuals in the distribution of drugs on the streets," because street-level drug transactions are "a subject beyond the ken of the average juror"). While average jurors may understand from common knowledge what a lookout does in general, they do not possess the specialized knowledge that drug dealers often work in pairs, one to conduct the transaction, another to function as the dealer's "eyes and ears," as Burokas explained. The judge logically could have reasoned that the expert testimony offered by the Commonwealth would assist the jury in understanding how the defendant could have been an active participant in the drug transaction, while appearing merely to be a passive bystander.[13] See *Commonwealth* v. *Frias, supra.*

---

[13]Although there is no Massachusetts case directly on point, other jurisdictions have addressed the issue of admissibility of expert testimony regarding the role of lookouts in drug transactions or similar conduct in connection with other crimes. The leading case in this regard is *United States* v. *Fleishman*, 684 F.2d 1329 (9th Cir.), cert. denied, 459 U.S. 1044 (1982). In that case, an agent of the Drug Enforcement Administration testified that "it was common to observe [one] member [of a group] involved in narcotics transactions acting as a lookout." *Id.* at 1336. The agent opined that the defendant, who had "merely [been] looking around" in a hotel lobby, was acting as "lookout" or was engaged in "countersurveillance activities." *Id.* at 1335, 1336. The court held that this testimony properly was admitted precisely because the defendant's conduct appeared "wholly innocent" and the officer's testimony was necessary to explain the potential significance of this conduct to the jury. *Id.* at 1336. See *United States* v. *Alonso*, 48 F.3d 1536, 1540-1541 (9th Cir. 1995) (Secret Service agent properly allowed to testify that defendant's conduct of looking into cars, looking at people in cars, and examining sidewalk was consistent with countersurveillance activities); *United States* v. *Stewart*, 770 F.2d 825, 831 (9th Cir. 1985), cert. denied, 474 U.S. 1103 (1986) (expert

Finally, to the extent that Burokas's testimony may have been unnecessary because the jury were able to judge the defendant's behavior on its own merits, the defendant can demonstrate no prejudice. See *Commonwealth* v. *Francis, supra* at 99 (if "question whether expert testimony would aid the jury is close, the likelihood of prejudice from the admission or exclusion of that testimony is slight"). The judge specifically ordered Burokas to testify generally "as to various methods of distribution of heroin," but "not limited to the one scenario of a lookout-type transaction." The judge also carefully limited Burokas's testimony to exclude any comparison, explicit or implicit, of the defendant's conduct to the general practices he described. In addition, the judge instructed the jury that they were free to accept or reject Burokas's expert testimony. The jury were, thus, "free to draw their own conclusion as to whether the prosecution made out a case that the conduct of the defendant and [Grant]" on June 24, 1999, fit one of the patterns described by Burokas.[14] *Commonwealth* v. *Robinson, supra* at 260. See *Commonwealth* v. *Dennis, supra* at 670.

*Conclusion.*

For the foregoing reasons, we conclude that the judge acted within her discretion in amending, posttrial, the first indictment to include the repeat-offender component of the second indictment. Furthermore, the judge's denial of the defendant's motions for a required finding of not guilty was proper where

testimony that defendant's driving behavior indicated that he was attempting to avoid surveillance properly admitted). But see *Jones* v. *United States*, 512 A.2d 253, 259-260 (D.C. 1986) (error to allow police officer to testify that defendant was "acting as an apparent lookout" during robbery).

[14]Likewise, to the extent that the scope of Burokas's expert testimony went beyond what was probative to understand the particular evidence in the case, the defendant can demonstrate no prejudice. The trial judge, by requiring Burokas to testify in general terms "as to various methods of distribution of heroin . . . but not limited . . . to the one scenario of a lookout-type transaction," acted in accordance with appellate decisions intended to alleviate prejudice to the defendant. See, e.g., *Commonwealth* v. *Frias*, 47 Mass. App. Ct. 293, 297 (1999); *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 670 (1992), *S.C.*, 416 Mass. 1001 (1993). Defense counsel utilized the component of Burokas's testimony that concerned complicated, multi-person drug transactions, see note 5, *supra*, to point out to the jury, in her closing argument, that the drug transaction in this case did not involve a money man, a mule, or a runner, thus distinguishing it from complex transactions described by Burokas.

the evidence, viewed in the light most favorable to the Commonwealth, was sufficient for the jury to find the defendant guilty beyond a reasonable doubt of distribution of heroin on the theory of joint venture. Finally, the judge did not abuse her discretion in admitting expert testimony.

*Judgments affirmed.*