Commonwealth v. Johnson.

COMMONWEALTH vs. KEVIN JOHNSON.

No. 08-P-639.

Hampden. September 16, 2009. - January 5, 2010.

Present: GREEN, GRAHAM, & FECTEAU, JJ.

*Controlled Substances. Evidence,* Certificate of drug analysis, Expert opinion, Profile. *Constitutional Law,* Confrontation of witnesses, Harmless error. *Practice, Criminal,* Confrontation of witnesses, Harmless error.

At the trial of an indictment charging trafficking in cocaine, the erroneous admission in evidence of a State crime laboratory chemist's certificate of analysis of drugs, without allowing the defendant an opportunity to cross-examine the chemist, in violation of the defendant's right under the Sixth Amendment to the United States Constitution to confront the witnesses against him, was harmless beyond a reasonable doubt, where, besides the certificate, there was direct evidence the substance was cocaine, in that a police officer testified as an expert witness that the amount and value of the substance was sufficient to meet the threshold for the trafficking charge, and the officer also presented substantial evidence as to the color of the cocaine; where there was ample circumstantial evidence of cocaine distribution (e.g., the defendant fled from the police); where the defense focused on whether the defendant possessed the cocaine for personal use or distribution, rather than whether the substance was cocaine; and where the prosecutor did not make frequent references to the certificate. [82-84]

At the trial of an indictment charging trafficking in cocaine, the erroneous admission in evidence of a police officer's expert opinion testimony regarding the expected characteristics of perpetrators of the crime of possession of cocaine for personal use, rather than for distribution, did not, in light of the strength of the Commonwealth's case and the defendant's failure to object to the admission of the testimony, create a substantial risk of a miscarriage of justice. [84-86]

INDICTMENT found and returned in the Superior Court Department on November 3, 2005.

The case was tried before *John A. Agostini,* J.

*Brad P. Bennion* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

GRAHAM, J. Following a jury trial in the Superior Court, the defendant, Kevin Johnson, was convicted of trafficking in cocaine with a net weight of twenty-eight grams or more and less than one hundred grams, refusal to submit to a police officer, and negligent operation of a motor vehicle. He appeals only from the trafficking conviction, contending that (1) the admission in evidence of a drug certificate of analysis, without live testimony by the chemist, requires reversal of his conviction on the drug charge, see *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009); and (2) the Commonwealth's improper use of profile evidence created a substantial risk of a miscarriage of justice. We affirm.

*Facts.* Viewed in a light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the jury could have found the following facts. On October 5, 2005, Chicopee police Officer Paul Gay was at the police station and read an interdepartmental electronic message alerting the officers that the department was looking for a dark sport utility vehicle (SUV) with shiny wheels, possibly with a black suspect operating the vehicle, who had been involved in a crime within the previous weeks. At approximately 5:15 P.M., Gay left the police station and was traveling on Main Street in Chicopee, in an unmarked vehicle with Lieutenant Lonny Dakin and Detectives Leclair and Liszka. Gay's attention was drawn to a dark SUV, occupied by a black male, parked in front of a package store. Leclair turned the vehicle around and turned into an adjacent parking lot directly across the street from the parked SUV. Shortly thereafter, a male drove a bicycle to the passenger side of the SUV, spoke briefly with the operator of the SUV, then rode away on the bike.

The officers ran a check of the license plate on the SUV and learned that the owner of the SUV was Kevin Johnson, who possessed a Massachusetts identification card but not a valid driver's license. The officers followed the SUV to a Walmart shopping area parking lot and then activated the vehicle's lights and siren. The SUV continued into the parking lot, turning left toward the front of a Marshall's store. Dakin observed the defendant toss something from the SUV and instructed Gay to get out of the vehicle and search for the item tossed. The remaining officers continued to follow the SUV.

Gay searched the area where the item had been tossed and, approximately twenty feet from the area where he began the search, found a clear plastic baggie containing what he believed to be crack cocaine. Using his police radio, Gay informed Dakin and Leclair that he had recovered a large quantity of cocaine.

Meanwhile, the defendant continued to drive the SUV through the parking lot, went through a red light at an intersection, and drove onto the Massachusetts Turnpike. The defendant then left the turnpike, entered the parking lot of a BJ's Wholesale Club, and brought his vehicle to a stop after traveling about 100 yards. There he was arrested. On his person, the officers seized a cellular phone and $90. No illegal drugs were recovered from his person or from the SUV. The defendant was transported to the police station, where he was booked.

At trial, the defense did not contest the fact that the defendant possessed the cocaine, but contended that he possessed the cocaine for personal use, not for sale. To combat this claim, Dakin gave expert testimony, generally, as to how cocaine was sold on the streets in Chicopee, and informed the jury that the cocaine recovered by Gay was valued at $3,500, but could be separated into small pieces that could be sold individually for twenty dollars each for a total sale price of over $9,000. He further testified that "[t]he crack user would not have the type of money needed to purchase this. A crack user needs to get high, so the time they have a [$]20, they go out and buy a 20 to get high." Finally, Dakin testified that, based upon his training and experience, the amount of cocaine possessed by the defendant was consistent with distribution, and not personal use.

1. *Introduction of the drug certificate.* At trial, a certificate of analysis from the State crime laboratory was introduced by the Commonwealth and admitted in evidence. The certificate stated that the substance seized by police and connected to the defendant was cocaine weighing ninety-eight grams. The defendant argues that he had a right under the confrontation clause of the Sixth Amendment to the United States Constitution to examine the chemical analyst whose affidavit was introduced to establish that the substance that he possessed and that was recovered by Leclair was ninety-eight grams of cocaine.

In *Melendez-Diaz, supra,* the Supreme Court ruled that

"analysts' affidavits are 'testimonial statements' and that '[a]bsent a showing that the analysts were unavailable to testify at trial *and* that [a defendant] had a prior opportunity to cross examine them,' a defendant has a right to confront the analysts at trial." *Commonwealth* v. *Connolly*, 454 Mass. 808, 830 (2009), quoting from *Melendez-Diaz*, *supra* at 2532 (emphasis in original). Here, as in *Melendez-Diaz*, there was no showing that the analyst was unavailable, and the defendant had not previously cross-examined her. Therefore, under *Melendez-Diaz*, admission of the certificate of analysis was error.

Although the defendant failed to preserve the issue at trial, we need not consider the appropriate standard of review, compare *Commonwealth* v. *Vasquez*, 75 Mass. App. Ct. 446, 451-462 (2009), and *id.* at 462-463 (Dreben, J., dissenting), as we conclude that, even under the more stringent standard of review for preserved error, the error here was harmless beyond a reasonable doubt. See, e.g., *Commonwealth* v. *Connolly*, 454 Mass. at 832.

"The admission of testimony obtained in violation of a defendant's confrontation rights will not amount to reversible error 'if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt.' " *Commonwealth* v. *Miles*, 420 Mass. 67, 73 (1995), quoting from *Delaware* v. *Van Arsdall*, 475 U.S. 673, 681 (1986). *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 (1999). A court must determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991), quoting from *Chapman* v. *California*, 386 U.S. 18, 24 (1967), or, put differently, "whether overwhelming evidence of the defendant's guilt exists without the erroneously admitted evidence." *Commonwealth* v. *Perez*, *supra*, citing *Milton* v. *Wainwright*, 407 U.S. 371, 372-373 (1972).

Here, the Commonwealth must prove beyond a reasonable doubt that the substance possessed by the defendant was in fact cocaine. Besides the certificate of analysis, there was direct evidence that the substance in fact was cocaine. This evidence was presented through testimony of the Commonwealth's expert witness, Dakin, both on direct and cross-examination. Dakin's description of the amount and value of the substance was suf-

ficient to meet the threshold for the trafficking charge. In addition, Dakin testified that the cocaine had been weighed at the police station and that the initial weight of the substance was 102 grams. Moreover, there was substantial evidence presented by Dakin, particularly on cross-examination, as to the color of the cocaine, whether the cocaine was "wet" or "dry," and the reason for the change in the color of the cocaine from "off-white" to "greenish."[1]

There was ample circumstantial evidence of cocaine distribution. See *Melendez-Diaz* v. *Massachusetts, supra* at 2542 n.14 (in declining to decide whether the admission of the drug certificates was harmless, the Supreme Court went on to note: "Today's opinion . . . in no way alters the type of evidence [including circumstantial evidence] sufficient to sustain a conviction"). In an effort to avoid being caught with the substance alleged to be cocaine, the defendant here fled from the Chicopee police officers, who were pursuing him in an unmarked vehicle with lights flashing and siren activated. Moreover, the defense in the case focused not on the question whether the substance the defendant tossed from the vehicle was cocaine, but whether the defendant possessed the cocaine for personal use or for distribution.[2]

Finally, we note the absence of frequent references by the prosecutor to the drug certificate. The prosecutor made no reference to the certificate in her closing argument. Proof that the substance was cocaine was not dependent upon the erroneous admission of the certificate. We conclude, therefore, that the admission of the certificate of analysis was harmless beyond a reasonable doubt.

2. *Profile evidence.* Part of the defense theory in this case was that the defendant's possession of a large quantity of cocaine

---

[1]Dakin testified that when crack cocaine has not dried fully, moisture may form in the plastic bag in which the cocaine is kept, resulting in a greenish mold forming on the cocaine.

[2]Although the chemist who analyzed the cocaine was not present in court or available for cross-examination, defense counsel spent considerable time cross-examining the Commonwealth's expert, Dakin, on the issue of the composition of the mixture containing cocaine in order to substantiate his argument that the defendant bought the cocaine in bulk for personal use. He was successful in getting Dakin to admit the mixture contained filler.

was consistent with his purchase of cocaine in bulk for personal consumption. In order to dispel that argument, the Commonwealth presented to the jury the testimony of Dakin, who testified as an expert in the area of various kinds of narcotic drugs. Dakin testified that users of crack cocaine would not have the approximately $3,500 needed to buy ninety-eight grams of cocaine. Users of crack cocaine, he opined, have, as their priority, a need to get high; therefore whenever such a person had $20, he or she would use the money to buy crack. The defendant argues that Dakin's testimony invaded the province of the jury, as fact finder, and should have been excluded as it regarded the expected characteristics (profile) the defendant should have exhibited had he been a mere user and not a distributor of cocaine. Since trial counsel did not object, the question on appeal is whether there was error in admitting the testimony, and, if so, whether it created a substantial risk of a miscarriage of justice. See, e.g., *Commonwealth* v. *Daye*, 411 Mass. 719, 741 (1992).

The defendant concedes that Dakin properly could opine that the amount of cocaine seized supported an inference that it was for distribution. See *Commonwealth* v. *Grissett*, 66 Mass. App. Ct. 454, 457 (2006) (subject matter not within the common experience of jurors). See also *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 581 (1998) (testimony must be explanatory and not presented in conclusory form as to whether defendant committed a particular crime). Rather, he argues that the testimony was offered improperly regarding the expected characteristics of perpetrators of this crime.

An expert may "describe the different roles played by individuals in the distribution of drugs on the streets." *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 669 (1992), *S.C.*, 416 Mass. 1001 (1993). However, the Commonwealth may not offer expert testimony regarding the expected characteristics of perpetrators of a crime. See *Commonwealth* v. *Federico*, 425 Mass. 844, 850 (1997); *Commonwealth* v. *Goetzendanner*, 42 Mass. App. Ct. 637, 644 (1997). The admission of this portion of Dakin's testimony was therefore error. However, the defendant did not object to the admission of the testimony and, based on the strength of the Commonwealth's case, we conclude that it did not create a

substantial risk of a miscarriage of justice. See, e.g., *Commonwealth* v. *Daye*, 411 Mass. at 741.[3]

*Judgments affirmed.*

---

[3]The defendant also argues that the improper profile testimony should be viewed in combination with reference by the prosecutor, during closing argument, to a brief meeting between the defendant and a bicyclist. During his testimony, Dakin testified that seeing the biker was significant to him because it was suspicious, although he did not witness a transaction between the defendant and the biker. We regard as speculation the defendant's argument that the combination "could have contributed to the conviction."